JOHN B. LATIMER, plaintiff in error, *vs.* R. STOKES SAYRE, defendant in error.

JOHN B. LATIMER, plaintiff in error, *vs.* HARRIET SAYRE *et al.*, defendants in error.

On the trial of a bill filed by an administrator of an estate against the legatees and creditors to marshal the assets, one of the creditors is not a competent witness to testify as to the nature and character of his contract with the deceased, even though the witness only proposes to state facts showing the dignity of the contract, and affecting only its priority.

Where there was a settlement between one of the executors of an estate and the legatees, in which there was turned over to the legatees a note of the executor, with a third party as security, as a part of the assets of the estate, and at the same time the executor gave to the legatees his individual note for the balance in his hands, and there was a distinct understanding that the last note was only given as evidence of the amount due, and that the executor was to be liable as executor for the amount of the same :

Latimer *vs.* Sayre.

*Held,* That the last note was still a trust debt and entitled to priority in the distribution of assets, but the first was not.

When one executor, having money in hand, loans it to another executor, taking his individual note for it, and in a settlement with the legatees, they take from the executor loaning the money the note as assets, giving him a full discharge and acquitance of all liability:

*Held,* That the note thus turned over is not a trust debt as against the maker of the note, and his statement that it shall be so considered does not make it such as to give it priority over other debts in the distribution of the estate of the maker of the note.

Party as witness. Distribution. Trust debt. Before Judge ANDREWS. Hancock Superior Court. October Term, 1871.

These two cases involving the same principle and the same transaction, were argued together. Jackson B. Johnson, as administrator *de bonis non cum testamento annexo,* upon the estate of James Thomas, deceased, filed his bill, praying, among other things, that the creditors of said estate might interplead among themselves, and thus ascertain whether the claims held by R. Stokes Sayre, Harriet Sayre, Nathan C. Sayre and Mary E. Calhoun, formerly Mary E. Sayre, are debts due from James Thomas as an individual, or as executor of Nathan C. Sayre, deceased, the aforesaid creditors affirming in their answers that said claims are due by Thomas, as executor, and one John B. Latimer, another creditor, affirming, by his answer, that said indebtedness is individual. This issue was submitted to a jury. R. Stokes Sayre offered himself as a witness to show what the contract was between him and the said Thomas at the time he received the claims for himself, his brother and sisters. An objection was made to his competency on account of Thomas being dead, which was overruled by the Court.

It appeared from the evidence that on October 25th, 1865, R. Stokes Sayre, acting for himself and as agent for Harriet Sayre and Mary E. Sayre, and for the guardian of Nathan C. Sayre, his sisters and brother, made a settlement with James Thomas, one of two executors of Nathan C. Sayre, deceased, for what was due to himself, his brother and sisters, amount-

ing to over $26,000, and gave to Thomas receipts; that in said settlement he received no money, but only papers which were assets of Sayre's estate, except the note for thirty-eight hundred and odd dollars, made by said Thomas, bearing date the day of the settlement, and made to cover the balance for which said executor had no assets in hand; that these assets consisted largely of claims on outside persons, and were received in absolute payment as far as they went; that among the assets of the Sayre estate received by him was a note on James Thomas, as principal, and Joseph B. Gonder, as security, for $3,000; that the note made by Thomas on the day of the settlement was received with the express understanding that the trust character of the debt should not be changed, it being given merely as evidence of the amount due by the executor; that James Thomas said that the settlement was made to save trouble after his death in ascertaining the amount due from him, and not at all to change the priority of payment which the law would give; that the note for $2,500, payable to H. Rogers, the other executor, was not received by R. Stokes Sayre in the settlement with Thomas, and was not covered by the receipts then given; that said note was then in possession of Rogers, having been given by Thomas for money of the Sayre estate loaned by Rogers, his co-executor, to him; that Rogers was present at the settlement and asked said Thomas how said note would be affected as to priority of payment after his death; that Thomas answered, it would stand like all the rest having his name on them, entitled to priority as debts due by him as executor; that afterwards, said Thomas not being present, R. Stokes Sayre received this last mentioned note in settlement with Rogers, as an absolute discharge, to that extent of Rogers' liability as executor. The receipts given by R. Stokes Sayre to James Thomas for over $26,000 were unconditional.

The Court charged the jury, "That a settlement between the legatees of Sayre and Thomas, the executor, covering the amount due from the executor, with receipts from the lega-

tees, acknowledging payment for that amount, is, when considered by itself, *prima facie* evidence that the payment was absolute, and that nothing is now due from the executor, as such ; but this is only a presumption, and is removed if, at the time of the settlement, there was an express understanding between the parties that the payment should not be absolute, but that the claims now before you should be debts against Thomas, not as an individual, but as executor of Sayre.  And this instruction applies to the note for $2,500, as well as to the other claims, if you should believe from the evidence that at the time of the settlement between Thomas and the legatees of Sayre, he said this note would also be a debt against him as executor, and would be entitled to the priority of payment belonging to that class of debts, after his death, although the note may not have been embraced in that settlement, and may have been in the possession of the other executor (Rogers) at that time, and may have been afterwards turned over to the legatees by Rogers, in absolute discharge of his liability as executor to the extent of the note."

The Court was requested in writing, and refused to give, the following charge to the jury : "If the note for $2,500 was accepted by Rogers, one of the executors, from Thomas, the other executor, before Thomas' settlement with the legatees, as assets of the estate, and was held by Rogers at the time of Thomas' settlement with the legatees, and was not included in Thomas' settlement, but was afterwards received by the legatees from Rogers in part final payment of Rogers' liability as executor, then said note is due from Thomas, not in his character as executor, but in his character as an individual, and is not entitled to the priority which belongs to debts due from an executor; and this is true, although, at the time of the settlement with Thomas, he may have said that the note for $2,500 would not lose its priority."

The jury returned a verdict giving to all of the aforesaid claims priority of payment.

John B. Latimer tenders his bill of exceptions, and says that the Court erred:

1st. In holding R. Stokes Sayre to be a competent witness, Thomas, the other party to the contract, being dead.

2d. In charging the jury, as hereinbefore set forth.

3d. In refusing to charge the jury, in writing, as set forth.

LINTON STEPHENS; GEORGE F. PIERCE, for plaintiff in error.

R. TOOMBS; C. W. DUBOSE, for defendants.

McCAY, Judge.

The Evidence Act of 1865–6, authorizing parties to be witnesses, in terms, excepts cases where one of the original parties to the cause of action on trial is dead, or where an executor or administrator is a party to a suit on a contract of his intestate or his testator : Section 3798 of the Code. This case is within the very letter of the Act. True, on that trial there has arisen another issue, in which the administrator has no special interest, since, in the condition of this estate, it matters but little to him and to the heirs-at-law, which of the creditors shall be first paid. But it will be a very dangerous practice to open the door to the evidence of the living party on special facts. Where are we to stop ? Perhaps the fact sought to be proved may need to be explained by going into the whole matter. The parties here defending, to-wit: the other creditors, are privies of the testator; they stand in his shoes; his property is in trust for their benefit and *prima facie* for their equal benefit. Is it fair to them, his successors, to permit one of the parties to the contract to be a witness, when the other party, to whose rights they succeed, is not here to confront the witness ? The letter of the Act excludes the witness, and we do not feel authorized to make this an exceptional case. Very clearly, from the facts as they transpired at the settlement, the note with security was un-

Latimer *vs.* Sayre.

derstood by the parties to be a settlement of the trust, a nova-tion by which a note with security was taken in lieu of the claim. The parties seem specially to have had this in view. It was taken as assets, not as a contract then made; it was so understood; the wards evidently looked to the security; they preferred that to the obligation of the executor, and this is the more evident from the fact that it was specially agreed as to the note taken of the executor on that day, that this last note was not taken in discharge of the trust. The executor was still to be liable on that note as *executor*. It is purely a question of intention. We held this in another case at this term, to-wit: the case of Coleman *vs.* Davis, from Richmond. The mere giving of the note even might not be a settlement, perhaps even adding a surety to it would not change the character of the debt, but the circumstances in proof show that it was the intent so to do. The difference between the note with security and the note without was well understood and remarked upon; one was considered and taken as assets; the other as a mere memorandum of the amount due as executor. Our judgment is, that the note without security is still a trust debt, and the notes taken as assets from Mr. Thomas, are not trust debts, in the sense of the Statute of Distributions.

As to the other note, the one taken from the co-executor. It is very plain that by the express contract of the parties that executor was discharged. In lieu of their joint debts against both the executors, the *cestui que trusts* agreed to take the note of one of the executors, turned over to them by the other, and they gave him a full discharge. This note was a personal debt of Mr. Thomas to the other executor. True, it was given for money of the estate, received by and charged to him. But on the receipt of it, they acquitted him of his trust, and as soon as this occurred the trust ceased. Mr. Thomas could not, by his agreement, give it again a trust character. It would be a dangerous rule to permit a man *thus* to give priority to one over another in the distribution of

his assets.   The foundation of the priority of trust debts is, that the intestate has no estate until trust debts are paid; it is not his; he only has it in trust.   To come within the rule, the debt must be in fact a trust debt; it is not sufficient that it shall be agreed to be so considered.   Other persons have rights in this besides the deceased, and it is the law and not the agreement of the parties that regulates the priority.

Judgment reversed.