Smith v. Burnet.

---

Stephen O. Smith, surviving executor &c., appellant,

*v.*

Emma L. Burnet, respondent.

1. Where, upon exceptions being filed to the account of an executor, on the ground that he has not charged himself with certain shares of stock, the executor claims the stock by virtue of a gift from the deceased, he is not a competent witness under the act of 1880, or any other act, to prove a delivery to him of the stock by, and the alleged declarations of, the deceased at the time of the delivery.

2. Upon the hearing, a witness swore that she heard the deceased say that he had given the stock to the executor, and the executor himself swore that he had had possession of the stock since January 7th, 1875. It appeared that the deceased gave to the executor, on January 7th, a power of attorney to receive and assign scrip or dividends; that the executor drew the dividends due after the death of the deceased, and paid out of the amount interest upon a

Smith v. Burnet.

mortgage due by the deceased, and that he afterwards assigned the scrip as executor.—*Held,* that the executor failed in showing that the stock passed to him by gift.

On appeal from a decree of the ordinary, whose opinion is reported in *Smith* v. *Burnet, 7 Stew. Eq. 219.*

*Mr. J. Frank Fort,* for appellant.

The reasons assigned for reversal are—

I. Because the ordinary erred in holding that the testimony of Stephen O. Smith, given in the cause, was illegal.

II. Because the ordinary erred in affirming the ruling of the orphans court excluding the offer of testimony, as stated in the exception to the ruling of the orphans court, at pages 28 and 29 of the printed case. *Exton* v. *Zule, 1 McCart. 509.*

If the court think the construction here put is inadmissible, then I hold that the executor was a competent witness under the one hundred and fifth and one hundred and sixth sections of the orphans court act. *Conover* v. *Conover, 3 Gr. 420–422 ; Davison* v. *Davison, 2 Harr. 169.*

The one hundred and sixth section of this act was passed prior to the act of 1859, removing disability to be a witness from interest in the cause, and prior to the act of 1849, which allowed an adverse party to be called as a witness. *Rev. p. 378 §§ 2, 3, marginal notes; Nix. Dig. p. 645 §§ 24, 26 ; Elmer's Dig. p. 364 §§ 19, 20.*

III. Because the ordinary erred in holding that the facts proved in the cause were not sufficient to establish a gift *inter vivos*, at law, between a father and son.

The facts proven in this case seem to me to make out a clear gift *inter vivos.*

It should be remembered that the gift sought to be sustained here is between father and son, and will be presumed upon much less positive proof, and when, in fact, it might not be inferred in other cases. *2 Schouler on Pers. Prop. 89 ; Smith* v. *Montgomery, 5 Mon. 502 ; Hepworth* v. *Hepworth, L. R. (10 Eq.) 10 ;. Betts* v. *Francis, 1 Vr. 152, 155.*

Declarations of an intention to give before donee had possession, are also strong evidence. *Rhodes* v. *Childs, 64 Pa. St. 18; McCluney* v. *Lockhart, 1 Bail. 117.*

As also subsequent declarations and admissions of having given. *Dean* v. *Dean, 43 Vt. 337; Burney* v. *Ball, 24 Ga. 505; Reid* v. *Colcock, 1 Nott & McC. 592; Grangiac* v. *Arden, 10 Johns. 293; Allen* v. *Cowan, 23 N. Y. 502.*

A writing purporting to give a bond which was transferable by delivery, but not delivered, has been held effectual. *Morgan* v. *Mallerson, L. R. (10 Eq.) 475; Voyle* v. *Hughes, 2 Sm. & Gif. 18; Jones* v. *Lock, L. R. (1 Ch.) 25; Marling* v. *Marling, 27 Am. R. 635; 2 Kent 438, note 1.*

A gift of railroad shares, where assigned in blank, but never recorded while donor was alive, sustained in *Stone* v. *Hackett, 12 Gray 227.*

The courts are now sustaining a doctrine of equitable assignment where a gift is shown to have been intended. *Camp's Appeal, 36 Conn. 88; Tillinghast* v. *Wheaton, 8 R. I. 358.*

The gift of a promissory note will be sustained when made by payee without endorsement, and donee may sue in name of personal representatives, without their consent. *Grover* v. *Grover, 24 Pick. 261; Wing* v. *Merchant, 57 Me. 383; Boles* v. *Kempton, 7 Gray 382; Simons* v. *Mosely, 7 Gray 87.* See *2 Redfield on Wills 312, 313 &c.*

The gift of a savings-bank book, without any assignment in writing or otherwise, will pass the deposit of the donor represented in the book to the donee. *Tillinghast* v. *Wheaton, 8 R. I. 536, 539; Brown* v. *Brown, 18 Conn. 410; Waring* v. *Edmonds, 11 Md. 424; Parish* v. *Stern, 14 Pick. 198; Turpin* v. *Thompson, 2 Metc. 420; Lee* v. *Boak, 11 Gratt. 182; Coldwell* v. *Renfraw, 33 Vt. 213; Westulo* v. *De Witt, 35 Barb. 215; Martin* v. *Funk, 75 N. Y. 134.*

In *Hackney* v. *Vrooman, 62 Barb. 650,* the court held the delivery of the original bond and mortgage, without any assignment thereof in writing, good. *Penfield* v. *Public Admr., 2 E. D. Smith 305.* Approved in *Allen* v. *Cowan, 23 N. Y. 502.* See *Allerton* v. *Lang, 10 Bosw. 362; Grangniac* v. *Arden,*

Smith v. Burnet.

*10 Johns. 293; Wing* v. *Merchant, 57 Me. 387.* See, also, *Bourne* v. *Fosbrooke, 18 C. B. (N. S.) 515; Westerlo* v. *De Wolf, 36 N. Y. 340.*

*Mr. G. F. Tuttle,* for responaent.

1. The appellant, who was surviving executor of Oliver Smith, deceased, claims that the testator, in his lifetime, gave him certain stocks. Even if such gift was made, it was unaccompanied by delivery, and, therefore, was invalid, and not a complete gift at law, *inter vivos.* See *Irons* v. *Smallpiece, 2 Barn. & Ald. 551; Shower* v. *Pilck, 4 Exch. 478.*

2. The evidence of the appellant was inadmissible to show dealings or transactions with the testator, or statement by him. *P. L. of 1880 p. 52.*

The opinion of the court was delivered by

REED, J.

The questions involved in this appeal arise upon exceptions filed to the account of Stephen O. Smith, the appellant and executor of Oliver Smith, his father.

The exceptions were filed upon several grounds, only one of which, however, is involved here. It is upon the ground that the accountant had not charged himself with one hundred and one shares of the stock of the Newark Mutual Fire Insurance Company, and with the dividends received therefrom.

By the testimony taken before the orphans court it appears that Oliver, the testator, in his lifetime, was the owner of the shares of stock to which the exception alludes. There was no contention upon this point, but it was admitted that two months previous to his death, Oliver was the owner of this stock.

The contention of the executor was, that at the time of Oliver's death, which occurred on the 6th day of March, 1875, Oliver was not the owner of the stock, and so he, Stephen, was not bound as executor to account for it as part of the testator's estate. It was insisted that Oliver, the testator, had given this

stock to the executor, who was his son, and the establishment of the gift became the objective point of the testimony taken before the orphans court.

The evidence there taken disclosed the following state of facts: It appears that, on January 7th, 1875, Oliver Smith, the testator, had this stock standing in his name on the books of the Newark Fire Insurance Company. On that day Stephen O. Smith, the executor, appeared at the office of the company, and presented the following paper:

"I hereby appoint Stephen O. Smith my attorney, to receive and assign any scrip or dividends due, or belonging to me, in the Newark Mutual Fire Insurance Company, and to receive the interest thereon.

"OLIVER SMITH."

"Dated, January 7th, 1875."

By virtue of this instrument, Stephen drew the January dividend of that year, amounting to $45.45; out of this was deducted $35.40, the amount of interest due upon a mortgage for $1,000 held by the company against Oliver, and the balance was paid to Stephen. This was on January 7th or 8th. On March 6th, following, Oliver died. On the 1st of April thereafter, Stephen O. Smith, upon the transfer-books of the company assigned this stock from himself, as executor, to himself individually. He subsequently drew the dividends for the years 1876 and 1877, and afterwards assigned the stock to one Stephen H. Plum. All this appeared by the testimony of the secretary of the fire insurance company.

It addition to this was the testimony of one Louisa Riker, an adopted daughter of Oliver, who was present with him during his last illness. She says that one day, Oliver, after looking over his papers and taking out his scrip, said that he was going to give that to his son Stephen. Stephen was not then at his father's.

She says, further, that one day, about the 1st of January, after Stephen came home, Oliver told her that he had given Stephen that scrip.

At this point of the trial the executor himself was sworn, who testified that he had possession of the stock after January 7th or 8th.

His counsel offered to prove by him that the deceased had transferred the stock to him, and stated, at the time of the transfer, that he gave it to him. This offer was overruled by the court, and this ruling is now attacked as erroneous.

The question is whether the accountant should have had the benefit of this testimony, of which, by the ruling, he is deprived.

Without the aid of legislative action the accountant was incompetent to testify, by reason of his interest in the event of the cause.

By the act of 1859, now section 34 of the act concerning evidence (*Rev. p. 378*), the common law disqualification of a witness in civil actions on account of his or her interest in the event of the suit, was removed, except as to parties to actions in which the opposite party should be prohibited by any legal disability from being sworn as a witness, or either of the parties should sue or be sued in a representative capacity.

The latter part of the restriction upon the body of the act was modified so as to permit a party suing or being sued in a representative capacity to offer himself as a witness, and if he should do so, then the opposite party, by this act, became qualified.

By the act of 1880 it is provided " that in all civil actions in any court of law or equity of this state, any party thereto may be sworn and examined as a witness, notwithstanding any party thereto may sue or be sued in a representative capacity; provided, nevertheless, that this supplement shall not extend so as to permit testimony to be given as to any transaction with or statement by any testator or intestate represented in said action."

If the act of 1880 includes within the scope of its operation the proceeding which we are now considering, it is apparent at a glance-that the testimony of Stephen O. Smith was properly excluded. The offer was to prove a delivery to him by the testator of the stock, and a statement by the testator of his intentions, at the time of the delivery, to make a gift. It needs no discussion of the objects which this legisla-

tion is designed to secure, to vindicate the action of the orphans court. The offer was so clearly repugnant to the letter of the supplement that no appeal to the spirit of the legislation is essential, although it could be effectually invoked if requisite to support the ruling.

The argument pressed upon the court as a reason for reversing the decree which affirms the exclusion of this evidence is, that the act of 1880 does not apply to the case as it was presented to the orphans court. It is contended that the proceeding was not a civil action in which a party is sued in a representative capacity, and it is further contended that if it can be said to be such an action, yet the executor could be the only one occupying that position, and as to him (if he chooses to present himself as a witness) the act of 1880 does not apply.

In the examination of the questions thus raised it is observable that the legislation under which they arise is not peculiar to this state. In the federal statutes, and in the acts of the legislatures of a number of states, similar enabling acts, with almost indentical restrictions, are found. *U. S. Rev. Stat. ch. 17 § 858; New York Code, title Examination of Witnesses, § 399; Bright. Purd. Dig., title Evidence, p. 624 § 16; Rev. Stat. of Ohio, title Evidence, § 5242; Code of Georgia, title Evidence, § 3798.* There are similar provisions in the statutes of other states.

Most of the cases in which the courts have been called upon to construe the operation of these acts are collected by Dr. Wharton under sections 464 to 478 of his work on Evidence. An examination of the cases will disclose the fact that in applying the acts both in their aspects as enabling acts as well as in their restrictive features, the courts have regarded the object of the legislation rather than the letter of the acts.

As enabling acts the federal courts have included within the term " civil action," as used in the act, all proceedings which are not criminal, and include suits in chancery as well as actions at law. *Rison v. Cribbs, 1 Dill. 181; Green v. United States, 9 Wall. 655; United States v. Ten Thousand Cigars, Woolw. 123.*

Inasmuch as without the enabling act interest would still continue to disqualify, therefore the liberal interpretation applied

Smith v. Burnet.

to the terms of the enabling part of the act was necessarily applied to its restrictive clause. The object of the restrictive clause in all the statutes is mutuality. Their purpose is, in the language of Dr. Wharton, to provide that when one of the parties to a litigated obligation is silenced by death, the other shall be silenced by law.

In enforcing the object of the statute, courts will look at the substance of the cause and observe, through the forms of the procedure, who are the real parties whose interests are antagonistic, and then will see that when one is put at a disadvantage by death, the other shall not be permitted to profit by the misfortune of his adversary. So the expression "civil action," as used in the Pennsylvania statute, was held to include all civil proceedings, and it was ruled that a distributee was not a competent witness, in the distribution of a decedent's estate, as to matters occurring in the lifetime of the decedent. *McBride's Appeal,* *72 Pa. St. 480.*

By the Ohio statute, the testimony of parties is excluded when relating to transactions between him and a deceased person against whose estate he asserts a claim. In an action against a person who was at the same time executor and legatee upon a refunding bond given by him as legatee, under an act, it was held that he could not testify to transactions which occurred between him and the testator; the court saying, "the reason of the law certainly applies in this case with the same force as if the residuary legatee had given the ordinary bond, and had been since sued as executrix. The form of the remedy given to the creditors of the estate can make no difference." *Stevens* v. *Hartley, 13 Ohio St. 525.*

The evidence act of Georgia, 1865–6, authorizing parties to be witnesses, excepts cases where one of the original parties is dead, or where an executor or administrator is a party to a suit on a contract of his intestate or testator. An administrator filed a bill against the legatees and creditors to marshal the assets, and it was held that one legatee could not give in evidence a transaction with the testator to show the priority of his claim to that of others. The court said that the case was technically

within the words of the act, but that beyond that, the other creditors were privies of the testator; they stood in his shoes; his property was in trust for their benefit, and *prima facie* for their equal benefit. Is it fair, said the court to them, his successors, to permit one of the parties to the contract to be a witness, when the other party, to whose rights they succeed, is not here to confront the witness? *Latimer* v. *Sayre, 45 Ga. 468.*

In the case of *Redman* v. *Redman, 70 N. C. 257,* the supreme court of North Carolina held that they would look at the interest of the party, and if he was in interest a plaintiff, although appearing as one of several defendants, they would treat him as plaintiff.

It is apparent that the object of the legislature is to be primarily regarded, and that the object is to close the mouth of a party whose interest is antagonistic to the estate of a deceased person in regard to those transactions and conversations in which the deceased bore a part, and concerning which he, if living, would be the most important, perhaps the only witness beside the opposing party.

The executor in the present case, while still executor, became, by the shape of the proceedings in the orphans court, a party in antagonism to the estate which, as executor, he represented. Had he not been executor, he must have brought his action as any other creditor, and he would have been clearly disqualified as a witness to prove the offer of his counsel made in this proceeding.

By the fact of his being executor, the only method of contesting his claim was by an effort to surcharge the estate with the amount of the assets which he claimed individually. This was accomplished by exceptions to the account. Whether it is said that the exceptants thereafter in that proceeding represented the interests of the estate, as they really did, or it be said that the accountant represented the estate technically as executor against a claim by himself individually, I think the proceeding was one which placed the accountant within the proviso of the act of 1880, and his offer was properly overruled.

The ordinary was clearly right in holding that it did not become competent by force of section 106 of the orphans court act.

The important question is, whether, upon the evidence as it stands, Stephen has proved a gift to himself by his father. The burden of proving a valid donation of the stock is upon him. *2 Kent 244; Irons* v. *Smallpiece, 2 Barn. & Ald. 551; Walter* v. *Hodge, 2 Swanst. 97; .Grey* v. *Grey, 47 N. Y. 552; Dilts* v. *Stevenson, 2 C. E. Gr. 407.*

The chancellor found that the testimony was insufficient to show a delivery of the stock in pursuance of an intention to confer absolute title to Stephen.

The declarations of the deceased, if made as sworn to, standing alone, would be of little or no force.

A gift without consideration requires, as an essential element, a delivery. To a mind unacquainted with the technical rule that in law an actual or symbolical tradition of the chattel is necessary to transfer the title, such an act would ordinarily not appear important. A statement, therefore, that a gift had been made would not, I think, of itself, import a compliance with all the technical requirements of a legal gift. The supreme court of Massachusetts has held that the delivery of a chattel necessary to the validity of a gift *causa mortis*, was not proved by subsequent declarations of the deceased made shortly before his death to a person not connected with the gift. *Rockwood* v. *Wiggin, 16 Gray 402.*

Where there is other evidence of a transference of the chattel from the possession of the alleged donor to the donee, the evidence of such declaration becomes important in fixing the meaning of the act transferring the possession.

Evidence of such declarations are then relevant, and, in such instances, important in determining whether a gift, a bailment or a trust, was intended at the time of the tradition. *Notes to Ward* v. *Turner, Lead. Cas. in Eq. (Fourth Amer. ed.) vol. I. p. 1241.*

In this case, Stephen swore that he had possession of the stock from February 7th or 8th. This evidence was not the subject

of objection.  Had it been, then, as such possession was by him referable to an act of the deceased in passing possession to him, it would probably have been as objectionable as the evidence propounded in the offer.  On the other hand, Lydia Riker thinks that she saw the stock in the chest of the deceased at a period later than the 8th of February.

Assuming, however, that it appears that Stephen had the possession subsequently to that date, the question arises whether it appears that such possession was delivered with an intention to confer upon him dominion over the stock as the absolute owner thereof.  Proof of such an intent is absolutely essential to support the gift.  *Gray* v. *Barton, 55 N. Y. 68 ; Hitch* v. *Davis, 3 Md. Ch. 266 ; Egerton* v. *Egerton, 2 C. E. Gr. 419.*

The only proofs of such intent on the part of the deceased are the declarations made, not cotemporaneous with such delivery, but at some time preceding, and probably again subsequent thereto.  In regard to such declaration sworn to by a third party, they should be scanned with circumspection.

The word " give " is often used with other meaning than as evincing an intent to confer the title in the thing delivered.

You give a person an article to carry for you, or to perform work upon.  This would not be an unusual or improper use of the word when employed in connection with a delivery for a special purpose.  " I intend to give that paper to Stephen to take to the office," or, " I gave that to Stephen," meaning that Stephen should do some act in connection therewith for the giver, would not be an unusual expression, as the word is loosely employed in daily transactions.  This view, together with the difficulty of recalling or stating with accuracy all that was said, and how it was said, should cause such a declaration to be closely scrutinized before a title is passed solely upon testimony like that here adduced.

But the remaining evidence in this case, resting upon proof which appears by written testimony, and uncontradicted, appears to me to be so inconsistent with the view that there was a transfer of the property in this stock to Stephen, that I think the conclusion of the ordinary was clearly right.

In the first place, the delivery of the stock, if delivered, was accompanied by a power of attorney, which has already been set out.   The possession by Stephen of the stock, as explained by this instrument, is the possession of an attorney for his principal.   Neither the form of that instrument nor its purpose, as explained by the secretary of the fire insurance company, is consistent with the view that it was used to convey title to the stock, but rather imports that its purpose was to empower the agent to do acts relative thereto for the convenience of the principal.   There is nothing in the generality of the power to indicate that it was intended to empower Stephen to assign to himself or to receive for himself the proceeds of an assignment to another.   The presumption arising from the form of the power is, that his acts under it were the acts of the principal as still the owner of the stock.

Again, the first act which Stephen did under this power was inconsistent with the view that he was the absolute owner.   Out of the proceeds of the dividend of 1875, he paid the interest upon a mortgage which his father owed to the insurance company.

What became of the remainder of that dividend does not appear, after it came to the hands of Stephen.   This act standing unexplained implies that Oliver still controlled the proceeds of this stock, and such control is fatal to any claim that the transfer of possession was by way of a gift.

Again, when Stephen, subsequently to the death of Oliver, made an assignment of this stock to himself, he did so as the executor of his father.   His assignment was not made as the owner of the stock, but as the representative of his father's estate.

It is true that he says that the secretary of the company directed the form of the assignment, but the fact that the inconsistency of such an assignment with his claim as owner by gift did not strike him at the time, is a matter of some significance in determining the question now under consideration.

I think, upon all the facts, the accountant below did not

prove that he held the stock as owner, and that the decree of the prerogative court should be affirmed.

*Decree unanimously affirmed.*