ETHEL RAYE GILSON, complainant-respondent,

*v.*

HARRY W. GILSON, complainant-appellant.

[Decided September 27th, 1934.]

On appeal from a decree of the court of chancery advised by Advisory Master Campbell, who filed the following opinion:

"This is an action for separate maintenance. Defendant counter-claimed, charging adultery. It is the second appearance of the parties in this court within a short period of time. On January 28th, 1932, complainant filed a petition for the causes of constructive desertion and extreme cruelty.

"Defendant counter-claimed, charging extreme cruelty. His counter-claim was dismissed. A decree *nisi* for complainant was entered September 6th, 1932. By an opinion filed April 27th, 1933, the court of errors and appeals directed reversal thereof. *Gilson* v. *Gilson, 113 N. J. Eq. 677.*

"On August 19th, 1932, complainant left the matrimonial domicile at 124 Sheridan Terrace, Ridgewood, and took up her separate residence at 263 Franklin avenue, also in Ridgewood, where she presently resides.

"Complainant was awarded alimony of $30 weekly. Defendant continued his payments thereof until April 26th, 1933, being the date of filing of the reversal opinion. Complainant testified that upon being informed of the reversal decree in the early part of May, 1933, she sought by phone, by personal interview and by letter to effect reconciliation. In this respect there is ample corroboration as well as defendant's admission. Not having received financial support since the reversal of the previous suit, and her conciliatory overtures having been ignored, complainant filed her bill in this cause June 9th, 1933.

"Defendant's answer sought to justify his refusal to support and maintain complainant 'because complainant committed adultery with one William Cooper, and she is living in an immoral and improper way by entertaining men in her apartment.' His answer questions the sincerity of her alleged desire for reconciliation.

"It further charges that her adulterous conduct 'justifies him in refusing to agree to a reconciliation; and in consequence of the said conduct of the complainant, he is under no legal obligation to live with or to contribute to her support.'

"By his counter-claim defendant charges complainant with adulterous acts at eight specific times and places, seven whereof indicate the time of commission to have occurred

prior to as well as during the pendency of the former suit. There was neither direct nor circumstantial evidence offered in corroboration of the allegation in paragraph 4 of defendant's answer charging complainant with 'living in an immoral and improper way by entertaining men in her apartment.'

"The parties were married in 1919. Complainant's age is thirty-three; defendant's is forty-nine. There are two surviving children of the marriage—girls, eleven and six years old, respectively. Their custody was awarded in the previous suit to the defendant, subject to unlimited visitation by complainant. Such award was continued *pendente lite* in this action.

"William Cooper is a chiropractor with an office at Ridgewood. He is about thirty-five years old, married and living with his wife. I cannot agree with defendant's contention that complainant left the marital abode at her peril, and that her conciliatory overtures were insincere.

"In *Weigel* v. *Weigel, 63 N. J. Eq. 677,* the court stated: 'The general proposition appears to be indisputable that the separation of one spouse from the other during the pendency between them of a suit for divorce is justifiable.' Complainant, upon being informed that the order advising a decree *nisi* in her behalf had been reversed, promptly proceeded to make conciliatory overtures. This was as it should be. The former marital status of the parties having been restored, there was no valid reason relieving her from her duty to return to live with the defendant.

"In this respect the court stated, in *O'Brien* v. *O'Brien, 103 N. J. Eq. 214:* 'Inasmuch as this court adjudicated in complainant's former suit that she had failed to substantiate the allegations of her petition, it was her duty to return to live with the defendant, for, as stated in *Taylor* v. *Taylor, 73 N. J. Eq. 745* (at *p. 748),* "A wife must live with her husband, make his home hers, and give him her society and services, unless she can show reasons, valid in law, relieving her from her duty to him." ' See, also, *Pinkinson* v. *Pinkinson, 92 N. J. Eq. 669.* I am not in doubt as to the *bona fides* of complainant's conciliatory efforts.

"All the adultery charges, specifically alleged as to time and place, are predicated upon circumstantial evidence. Defendant admitted that he possessed no personal knowledge of any adulterous acts and further admitted that he was unable to produce any witness or witnesses who could so testify. Conversations between the parties, as well as many incidents testified to by the defendant, were uncorroborated. Defendant testified that complainant had boastingly confessed to him her love for the co-respondent, Dr. Cooper. Complainant denied it. Mrs. Elsie Dreyer and Mrs. Marion T. Gaugler testified that complainant had confided to them, separately, her affection for Dr. Cooper. Complainant denied having done so. These latter alleged confessions appear to be the single element possessing semblance of corroboration. The issue appears, therefore, to be narrowed down to the questions of opportunity, and the will to commit. In *Berckmans* v. *Berckmans, 16 N. J. Eq. 122,* the court stated: 'To prove adultery by circumstantial evidence, two points are to be established: the opportunity for the crime and the will to commit. Where both are established the court will infer the guilt.'

"Dr. Cooper denied that he was involved in a love affair with complainant and further denied, categorically, all of the adulterous charges involving complainant and himself. As to the value to be attached to the testimony of an alleged paramour and his mistress, the court stated in *Berckmans* v. *Berckmans, supra:* 'The evidence of an alleged paramour, being *particeps criminis,* is but weak. It is not an unnatural presumption, if parties are guilty of adultery, that they will not hesitate to resort to perjury to conceal their guilt. But neither his evidence, nor of the woman charged with adultery, is to be rejected on the assumption that they are guilty. In the absence of very clear evidence of their guilt, their evidence is to be fairly weighed and considered.'

"As to complainant's purported admissions concerning her love affair with Dr. Cooper, Mrs. Dreyer testified, in effect, that complainant told her in November or December, 1931, that she was in love with another man, that she never pressed

complainant to reveal the man's name, and that it was not until the following March or April (although she and complainant had spent much time together during this period, complainant had described the man to witness, and the subject was a topic of frequent conversation) that complainant voluntarily disclosed that the man in question was Dr. Cooper. It is difficult to understand why that human characteristic, curiosity—conceived in the Garden of Eden and inherited by all the daughters of Eve—should have so complacently slumbered in this witness for at least four months. Surely, and assuming that there was a close friendship between complainant and Mrs. Dreyer, complainant would not have considered it a breach of good manners, much less an act of officiousness upon the part of Mrs. Dreyer had the latter sought relief more promptly from the attendant consuming suspense. The court is not bound to accept everything as true a witness may testify to. Testimony, to be worthy of belief, must not only be offered by a credible witness but must be such as the common experience and observation of reasonable men can approve as probable under the circumstances. There is no test of the truth of testimony, except its conformity to our knowledge, observation and experience. Improbable testimony is such as imputes conduct inconsistent with those principles by which persons, similarly situated, are governed. *Daggers* v. *Van Dyck, 37 N. J. Eq. 130; Clark* v. *Public Service Electric Co., 86 N. J. Law 144; Riehl* v. *Riehl, 101 N. J. Eq. 15.*

"Much of Mrs. Dreyer's testimony appeared to me to be so contrary to the natural order of things and so highly improbable in a situation of this nature as to lack rational confidence. She impressed me as possessing not only radiant consciousness of her importance as a witness, but also, biased eagerness; glorified eagerness to condemn this complainant to a life of dishonor, and her children to shame.

"Mrs. Gaugler's testimony was to the effect that complainant's confession of love for another man and the identification of that man as Dr. Cooper were simultaneous; that complainant conversed frequently with the witness concerning

her love affair with the doctor. This witness also testified concerning a visit by Dr. Cooper to complainant while she was still a member of defendant's household at 124 Sheridan Terrace. As a matter of fact, all that Mrs. Gaugler saw was the doctor's car parked in front of complainant's home; she neither saw him enter nor leave the home. Mrs. Meulendyke also testified concerning this incident. She saw Dr. Cooper enter complainant's home but did not see him leave, although his car was parked in front of the home for nearly two hours. Defendant charges adulterous conduct on this occasion. The testimony offered in rebuttal was amply sufficient to indicate that both of these witnesses were mistaken; they failed in their respective efforts to resolve an inference into a fact. I am purposely referring to this latter incident because it is the nearest approach to corroboration of opportunity and the will to commit adultery as compared with that offered in corroboration of any of the many other allegations and circumstances involved.

"There was corroboration to the effect that complainant was seen with Dr. Cooper in his car, parked at twilight on the principal business streets in Ridgewood. She admitted it. Complainant further admitted having taken rides on several early afternoons with Dr. Cooper through the Saddle river hills. Defendant charges adulterous conduct on these occasions. Is it probable that the parties would have committed so gross an act in virtual daylight, and under the very eyes of all who might pass by? I think not.

"Assuming, but not concluding, that all the conversations alleged by defendant to have taken place between complainant and himself were true and, also, that all the incidents alleged to have been observed by him happened precisely as he testified, were not those conversations and circumstances sufficient to put him on his guard; was it not his duty to have done something more than he appears to have done in order to prevent what he claims has happened? That complainant's conduct was, according to defendant, sufficient to arouse suspicion is beyond question. It is, therefore, difficult to understand why he made no effort to trap his wife and Dr.

Cooper; it is difficult to believe that an aroused, injured husband would have stood idly by for a period of more than two years, possessing the knowledge that his wife was in the constant company of a man (of whose relations with her he was suspicious) without making any investigation to ascertain what they were doing, or to confront them in their alleged misconduct. And, what is more, practically all the material facts of the case were alleged to be within the defendant's knowledge for a considerable period prior to the commencement by complainant of her previous action and were, consequently, available to him as a defense thereto. Yet he forbore to take a step for the vindication of his injured honor; he quietly submitted to have his home turned into a brothel and to have a foul blot inflicted upon the honor of his children and himself.

"Referring again to *Berckmans* v. *Berckmans, supra,* the court said, in this respect: 'In the investigation of a wife's guilt, the conduct of the husband is always regarded as a most significant circumstance. So long as there is reasonable doubt of her guilt, or a plausible ground for a hope of her innocence, the husband's forbearance is both excusable and laudable. But when the husband holds in his hands what he claims to be satisfactory proof of his wife's guilt, his delay to prosecute is strong evidence in the wife's favor.' Also, in *Alha* v. *Alha, 94 N. J. Eq. 692,* the court said: 'I cannot imagine how any sane man could be so colossally stupid as to stand by for a period of * * * years and observe the incidents * * * without being suspicious. The best that can be said is that he was absolutely indifferent to his wife and her conduct and absolutely unappreciative of the duties of a husband, both legal and moral, to protect his wife's fair name, and see that she was not improperly led into temptation.'

"See, also, *Delaney* v. *Delaney, 71 N. J. Eq. 246; Rapp* v. *Rapp, 67 N. J. Eq. 236; Young* v. *Young, 94 N. J. Eq. 155; Hedden* v. *Hedden, 21 N. J. Eq. 61.* Proof of adultery must be beyond a reasonable doubt. The court of errors and appeals so held in *Berckmans* v. *Berckmans, 17 N. J. Eq.*

*453:* 'The charge made by the complainant, if true, is known to our law as a crime; consequently, this prosecution partakes strongly of the nature of criminal proceedings, so much so as to place the complainant under the necessity, not only of placing a decided preponderance of testimony in favor of the charge, but of proving it to the satisfaction of this court, beyond a reasonable doubt. I do not mean to say that it must be done by such an amount of overwhelming and unmistakable evidence as to render it impossible to be otherwise, but the evidence must be such as to satisfy the human mind, and leave the careful and guarded judgment of the court free from any conscientious and perplexing doubts as to whether the charge be proved or not. If, after a careful examination of all the competent testimony, such doubts remain immovable, it is clearly our duty to give the defendant the benefit of such doubts and refuse the prayer of the complainant.' While there is much in complainant's conduct to regret and censure as indiscreet, imprudent and ill advised, these elements are by no means conclusive evidence of guilt. The mind of the court must be satisfied beyond a reasonable doubt that there was an intimacy between the parties entirely inconsistent with the duty which a virtuous wife owes to herself and to her husband.

"The rule in this respect is laid down in *Hurtzig* v. *Hurtzig, 44 N. J. Eq. 329:* 'It is often difficult to discriminate between that which points to the crime of adultery and that which indicates nothing more than imprudence, indiscretion and folly. It must be borne in mind that the burden of proof is upon him who asserts the adultery and that the burden must be clearly sustained. * * * If the circumstances, taken singly and together, reasonably admit of two interpretations, that interpretation which favors innocence should be adopted.'

"Defendant impressed me as being intelligent and the possessor of a keen, analytical mind. Of mature age, it is reasonable to assume that he understands, at least as well as most of us, the modernity of things worldly. That business conditions seriously affected his income and burdened his

mind with great cares and worries, which, undoubtedly, he brought into his home, is undeniable. Whether because of this latter condition or by reason of his general nature, defendant impressed me as cold, indifferent, neglectful, morose and of a radically different disposition from the complainant, she being full of life, desirous of companionship and affection and which feelings were not, apparently, reciprocated by him.

"That this marriage has been a most unfortunate one is self-evident, and it might, perhaps, be better for both of the principals, if they were separated, but that is a question with which I am not permitted to deal. Great wrongs, or at least great mistakes, have doubtless been committed by some, perhaps all, of the parties prominent in the affair, which, with a little more consideration and a small amount more of conciliation, might have been prevented.

"I have studied the testimony most carefully. Frankly, the matter has, by reason of its many ramifications, caused me great concern because of the instinctive dread I possess in pronouncing a decree of divorce against a woman for the cause of adultery based upon circumstantial evidence, particularly of the type upon which this action has proceeded.

"Under all the circumstances, including my observation of the general demeanor of witnesses, I feel wholly warranted in concluding that the evidence is not of that safe, satisfactory and reliable kind, the elements of opportunity for the crime and the will to commit not having been satisfactorily established to justify me in condemning this complainant to perpetual infamy and disgrace.

"An order will be accordingly advised dismissing defendant's counter-claim. With the counter-claim thus disposed of, an order may be entered to the effect that defendant abandons and separates himself from complainant without justifiation and refuses and neglects to maintain and provide for her."

*Messrs. Ely & Ely,* for the appellant.

*Mr. Charles F. Black,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed by Advisory Master Campbell in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.