## IN THE MATTER OF THE ESTATE OF SANTA PERRONE, DECEASED.

Argued October 9, 1950—Decided November 13, 1950.

516

*Mr. Leslie S. Kohn* argued the cause for the appellants (*Mr. Harry Potter,* attorney for Joseph Perrone; *Mr. Leslie S. Kohn,* attorney for Thomas Perrotta).

*Mr. Ralph G. Mesce* argued the cause for the respondents (*Messrs. Carl & Wm. Abruzzese* and *Mr. Ralph G. Mesce,* attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J. From an order of the Probate Division of the Essex County Court allowing an exception to the account of the executors of the estate of Santa Perrone an appeal was taken to the Appellate Division of the Superior Court and certified here on our own motion.

Santa Perrone died on December 31, 1947, leaving a will naming her husband, Joseph Perrone, and her nephew,

Thomas Perrotta, as her executors. To the inventary filed by them, Alfredea Piro and Angelina Piro, two of the legatees, filed an exception alleging that the executors had failed to include in the inventory the sum of $1,207.03 on deposit in the Bank of Nutley in the name of Joseph or Santa Perrone, which, they contend, constitutes an asset of the estate.

At the hearing on the exception on December 6, 1949, it developed that the Perrones were married in 1932. At the time Mr. Perrone was employed by a leather company while Mrs. Perrone owned and ran a small store. In 1943 Mr. Perrone left his job with the leather company to take one with the Nutley Park Department at a salary of $35 to $38 a week. He held that job for two years, when he began to work in his wife's store, also doing odd jobs as a gardener, as the income from the store, he said, was not sufficient to cover household expenses.

The account in question was opened on May 22, 1943, with an initial deposit of $204. Mr. Perrone testified that all deposits to the account were made with his own money and that no deposits were made therein by his wife. The deposit slips, which were not in Mr. Perrone's handwriting, reveal that each check deposited, except one, exceeded Mr. Perrone's current weekly salary, which was paid him by check, and several of the deposits were checks received from customers of the store prior to Mrs. Perrone's leaving it because of illness. Mr. Perrone explained these circumstances by saying that the customers' checks had been cashed by him out of his own funds, that he had purchased merchandise in his own name for resale, that the store was in fact owned by him. Yet no deposits were placed in the bank account after the death of Mrs. Perrone and no withdrawals were made therefrom until after her death. On October 29, 1948, ten months after her death, Mr. Perrone executed a draft to his own order for the entire balance in the account. Other than the assistant cashier of the Bank of Nutley, who merely identified certain documents, Mr. Perrone

was the only witness at the hearing. No evidence was offered by the accountants to refute the exceptants' case.

On December 12, 1949, six days after the hearing on the bank account, the same exceptants filed a complaint charging the executors with having failed to include in the inventory two mortgages aggregating $5,615, and on the basis of the complaint they obtained from the trial court an order to show cause why the executors should not be removed, with *ad interim* restraint against the disposition of the assets of the estate. On the return of the order to show cause the matter was continued three weeks to January 31, 1950, at the request of the executors. At the adjourned hearing no testimony was taken, but counsel stated in open court the undisputed facts. The husband-executor had obtained payment of the balance of $5,615 due on two purchase money mortgages made in 1945 and 1946 respectively and standing in the names of the husband and wife. Three checks in all, one to the order of husband and wife, another to his order individually and as executor, and a third to the order of cash, were endorsed and appropriated by him, with the assistance of his co-executor, who joined with him in endorsing the mortgages for cancellation, their signatures being certified as genuine by an attorney other than the attorney for the estate, who had no knowledge of the mortgages until he received the complaint and the order to show cause. The mortgages were not included in the inventory or in the inheritance tax report and the exceptants acquired knowledge of them by rumor subsequent to the original hearing on December 6, 1949. On January 30, 1950, the day before the adjourned hearing, Mr. Perrone agreed to pay back $2,807.50, being one-half of the amount he had collected, which is concededly all that was due to the estate on the mortgages. The only dispute as to the mortgage transaction was with respect to counsel fees and costs, which the trial court took under advisement pending a decision as to the bank account.

The trial court, after considering the evidence along with the demeanor of the witness, concluded that the money in the

·bank account was originally that of the decedent and not that of the husband; that the husband's claim that he put his wife's name on the account so that she would have the fund in the event of his death negatived the possibility of a gift *inter vivos* from her to him; and that the account not only was originally hers but continued to be her property. The money in the bank account was ordered to be included in the inventory and to be distributed in accordance with the will. From this order the executors have appealed.

The first of the four points argued here is that the exceptants failed to sustain their burden of proof or to produce any evidence that the money in the bank account had been the property of the testatrix. It is well settled that the burden of showing that there are more assets in an estate than are acknowledged by the executors in their inventory or account rests upon the exceptants, and that their contentions must be sustained with reasonable certainty, *In re Schlosser,* 119 *N. J. Eq.* 201 (*Prerog.* 1935); affirmed, 119 *N. J. Eq.* 488 (*E. & A.* 1935). The burden of proof is upon the exceptants to show that the bank account belonged to the decedent, but when this burden has been met by the exceptants the burden is transferred to the executors to establish their own claim to the property in question, *Smith v. Burnet,* 35 *N. J. Eq.* 314, 323 (*E. & A.* 1882); *Slack v. Rees,* 66 *N. J. Eq.* 447, 449 (*E. & A.* 1904); *In re Fulper,* 99 *N. J. Eq.* 293, 302 (*Prerog.* 1926). The appellants contend that the testimony of Mr. Perrone is uncontradicted and even though the court believes it to be improbable or incredible, the court must nevertheless accept it as true, citing *Wilken v. Shein's Express,* 131 *N. J. L.* 450 (*Sup. Ct.* 1944), and *Baldauf v. Russell,* 88 *N. J. L.* 303 (*E. & A.* 1915). The court, however, is not so restricted in its capacity as trier of the facts, but is free to weigh the evidence and to reject the testimony of a witness, even though not directly contradicted, when it is contrary to circumstances given in evidence or contains inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite sus-

picion as to its truth. Testimony to be believed must not only proceed from the mouth of a credible witness but must be credible in itself. It must be such as the common experience and observation of mankind can approve as probable in the circumstances. *Ravitz v. Chirelstein*, 135 *N. J. L.* 5, 6 (*Sup. Ct.* 1946); *Gilson v. Gilson*, 116 *N. J. Eq.* 556, 560 (*E. & A.* 1934); *Dobbin v. Plager*, 92 *N. J. Eq.* 231, 235 (*E. & A.* 1920); *Cartan v. Phelps*, 91 *N. J. Eq.* 312, 316 (*E. & A.* 1920); *Second Nat. Bank of Hoboken v. Smith*, 91 *N. J. L.* 531, 537 (*E. & A.* 1918); *Clark v. Public Service Electric Co.*, 86 *N. J. L.* 144, 150 (*E. & A.* 1914); *Schmidt v. Marconi Wireless Tel. Co.*, 86 *N. J. L.* 183, 186 (*E. & A.* 1914). Even in the case of *Baldauf v. Russell, supra*, 88 *N. J. L.* 303 (*E. & A.* 1915), relied upon by the appellants, it was stated (at *page* 306):

"But the testimony of a competent witness cannot be capriciously rejected. There must appear some good reason for such action, as, for example, that his story was inherently improbable, or that it was contradicted by some other testimony, or by some proven fact or circumstance, or by testimony impeaching his truth and veracity."

In the instant case not only is the testimony of the husband improbable as being contrary to common experience, but suspicion is cast upon it by the documentary evidence introduced in the cause and by the husband's admitted defalcation with respect to the mortgages. Moreover, it is a well established and obviously salutary rule in this State that the testimony of a witness need not be believed when the only person who could have contradicted the witness is dead. *Ravitz v. Chirelstein, supra*, 135 *N. J. L.* 5, 6 (*Sup. Ct.* 1946); *Hyman v. Bierman*, 130 *N. J. L.* 170, 172 (*E. & A.* 1943); *Benjamin v. Blake*, 121 *N. J. L.* 10, 12 (*Sup. Ct.* 1938); *Baier v. Cleaver*, 114 *N. J. L.* 346, 351 (*E. & A.* 1935); *Derose v. D., L. & W. R. R. Co.*, 9 *N. J. Misc.* 183, 184 (*Sup. Ct.* 1931); appeal dismissed, 109 *N. J. L.* 135 (*E. & A.* 1932); *Clark v. Public Service Electric Co., supra*, 86 *N. J. L.* 144, 150 (*E. & A.* 1914); *Vreeland v. Vreeland*, 48 *N. J. Eq.* 56, 66

(*Ch.* 1891); *Earle v. Norfolk and New Brunswick Hosiery Co.,* 36 *N. J. Eq.* 188, 192 (*Ch.* 1882).

The appellants go a step further, however, and argue that even if the testimony of Mr. Perrone was so evasive as to result in completely discrediting him as a witness, the maximum effect of his inconsistencies would be to neutralize his testimony and to wipe the slate clean so far as his evidence was concerned, relying on *Baldauf v. Russell, supra,* 88 *N. J. L.* 303, 306 (*E. & A.* 1915). In that event the appellants contend that the only evidence remaining in the case would be that of the assistant cashier, who testified that there was a deposit in his bank standing in the name of the husband or wife and that a presumption would arise that it was the intention of the parties at the time of the opening of the account to create a joint tenancy with the right of survivorship. But the trial court is not required to reject the testimony of Mr. Perrone in its entirety and the cited case does not so hold. This contention of the appellants not only ignores the reasonable inferences to be drawn from the documentary evidence introduced before the court, but it is premised upon a mistaken view of the law with respect to the bank account in question. Bearing in mind that all but one of the checks deposited exceeded Mr. Perrone's current weekly salary, that some of the deposits were checks of customers of his wife, that the deposit slips were not in his handwriting, it was entirely reasonable for the trial court to infer that the money in the bank account belonged to Mrs. Perrone. It is therefore clear that the trial court was justified in finding that the exceptants had supported their burden of proof that the property was originally that of Mrs. Perrone and that the executors had failed to sustain their burden of proof of showing a transfer of the bank account to the husband, unless the fact that the bank account was in both names be sufficient in and of itself, a question which will be discussed in due course. While we are not bound by the findings of fact made by the trial court, we are required to give due regard to the oppor-

tunity of the trial court to observe the demeanor of a witness and to judge of his credibility, *Rule* 1:2–20(a). No sound reason has been advanced on this appeal as to why the findings of fact should be rejected. On the contrary, the findings of fact command our concurrence.

The appellants next urge that the trial court erred in taking into consideration Mr. Perrone's unreliability as reflected by the admitted facts of the mortgage transactions. They contend that the complaint of December 12, 1949, and the order to show cause issued thereon constitute a separate action distinct and apart from the exceptions originally taken to the bank account. This contention is, of course, without merit. The complaint has for its primary purpose the same object as the exception to the account, *i. e.*, to make the executors account for assets undisclosed in the inventory or account. It differs from the original proceeding only in the nature of the extraordinary relief sought in the removal of the executors and in the *ad interim* restraint granted against disposing of the assets of the estate. The parties are the same in each instance. The earlier phase of the proceeding had not yet been disposed of by the court. The husband's conduct in procuring for himself the payment of the balances due on the two mortgages held by the husband and wife, the checks drawn in divers form, and the act of having the mortgages certified for cancellation by an attorney other than the one who had been representing him in the handling of the estate, all reveal wilful wrongdoing that called forth at the adjourned hearing not only expressions of regret from his counsel but also from counsel who had been called in to represent the nephew-executor. The argument that the husband was ignorant of the fact that the estate had an interest in the mortgage is conclusively rebutted by the fact that he signed both mortgages and one of the checks in his representative capacity as executor and endorsed the name of his wife to another of the checks that was received by him eight days after her death. That these facts with reference to the mortgage transactions came into the case through the admissions of counsel in open

court in the presence of each other rather than through the process of examining witnesses does not prevent their being considered by the trial court in judging of Mr. Perrone's credibility as a witness. Admitted facts and the inferences reasonably to be drawn from them are quite as available to the trial judge in reaching his decision as any oral testimony or documentary evidence adduced before him. Indeed, admissions frequently constitute stronger proof than oral testimony or documentary evidence because, being admitted, they are not susceptible of refutation. There is thus no substance to the husband's contention that he had no opportunity to rebut the impression created by the mortgage transactions or to object thereto.

It is next contended by the appellants that the trial court erred in permitting counsel for the exceptants to call Mr. Perrone as a witness and then to examine him as on cross-examination, citing *R. S.* 2:97-12:

"Except as otherwise provided by law, when any party is called as a witness by the adverse party he shall be subject to the same rules as to examination and cross-examination as other witnesses."

To our knowledge it has never before been sought to apply the statute to accountings in probate matters and manifestly it is not applicable thereto. An accounting is an administrative proceeding under judicial supervision rather than a suit between parties and every accounting is accordingly entitled in the matter of the estate involved rather than in the names of the executors and the exceptants. It has long been the uniform practice throughout the State for the exceptant on an accounting to examine the personal representative of the decedent as on cross-examination. To compel an exceptant to an inventory or to an accounting to make the personal representative his own witness and be bound by his testimony on direct examination while permitting the personal representative to be cross-examined only by his own counsel would inevitably lead to a miscarriage of justice. Wherever the fiduciary relationship exists sound public policy calls for the

most searching inquiry into the conduct of the fiduciary and he should not be shielded from such an inquiry by the rules applicable to ordinary actions at law. The traditional practice in this State on accountings is accurately described in 1 *Kocher's New Jersey Probate Law and Practice* (1916) 666:

> "The practice is for the exceptant to first call the accountant to the stand and examine him as to the matters involved in the exceptions. In such examination, much the same latitude is allowed exceptant as is allowed upon cross-examination in ordinary cases. The accountant is in no sense the exceptant's witness, but is called upon to make full discovery as to his acts and doings in relation to such matters. Thus, an administrator entitled to a distributive share of the personal estate of his intestate may be so examined for the purpose of showing that he or his co-administrator was indebted to the estate. After the examination of accountant by exceptant has been completed, counsel for accountant is permitted to cross-examine him upon the testimony given in what would ordinarily be called his direct examination."

This view is reaffirmed in later works, 1 *Wallzinger, New Jersey Probate Practice* (1931) 22; 7 *Clapp, New Jersey Practice, Wills and Administration* (1950), § 746; 8 *Id.,* § 1448, *Comment* 3. The established practice is salutary and should be adhered to.

Finally, the appellants argue that even if the money deposited in the bank account originally belonged to Mrs. Perrone, a conclusive presumption of joint tenancy in favor of the husband as the survivor is raised by *R. S.* 17:9A–218 (*P. L.* 1948, *c.* 67, *p.* 352, § 218):

> "When a deposit has been or shall be made with a banking institution in the names of two persons, payable to either, or payable to either or to the survivor, any moneys to the credit of the account may be paid to either of said persons during the lives of both and, in case of the death of either of said persons, the moneys to the credit of the account shall, unless otherwise provided in the deposit contract, be paid to the survivor, and the legal representative of the one dying shall have no right thereto notwithstanding that such moneys or any part thereof may have been the property of the one dying. Nothing in this section shall impair the rights, if any, of creditors of either depositor."

This statute was preceded by *R. S.* 17:9–5, which was substantially similar except that it related to banks and trust companies rather than banking institutions generally, and *R. S.* 17:9–5.1 which dealt with deposits in savings banks and differed in substance from *R. S.* 17:9A–218 only in providing that payment *may* be made rather than *shall* be made to the survivor. These statutes were before the Court of Errors and Appeals in *Stiles v. Newschwander,* 140 *N. J. Eq.* 591, 594 (*E. & A.* 1947), where it was held:

> "Neither *R. S.* 17:9–5 nor 17:9–5.1 gives rise to a conclusive presumption of a gift of a present beneficial interest in the deposit, with the right of survivorship that is an incident of a joint tenancy, where words of joint tenancy or joint ownership are used in the creation of the account. The section first cited lays down a rule of evidence rather than of substantive law. Words of joint tenancy or of common ownership merely constitute presumptive evidence of an interest by survivorship which stands until overthrown by proof *contra.* And the second section, applying to savings banks, has reference only to the protection of the bank in the payment of the fund to either of the co-depositors, even though the other be dead."

This reasoning is equally applicable to *R. S.* 17:9A–218 and disposes of the appellants' contention that the presumption raised by the statute is conclusive. The appellants cannot hope to prevail in the absence of a conclusive presumption, first, because there is absolutely nothing to indicate any intent on the part of the testatrix to make a gift *inter vivos* to her husband; and second, because the appellants have precluded themselves from making such a contention by the husband's claim that the deposits in the account belonged originally to him rather than to his wife. Although a party may argue inconsistent principles of law, he cannot be heard here to contend for two diametrically opposed sets of facts. By claiming that the money in the account was originally his, Mr. Perrone has himself rebutted any presumption arising from the statute and cannot claim the bank account as a surviving joint tenant.

The judgment below is affirmed.

CASE, J. (dissenting). I have a different view of the facts and so come to a different conclusion of law.

The decedent and Joseph (Guiseppe) Perrone were married in 1932 at the City Hall in Newark. The wife died, on December 31, 1947, at a hospital where she had gone for an operation. At her death she owned a bank account in the Bank of Nutley, Book 12157, in the name of Santa Crocco, in the amount of $9,313.82 and another account in the same bank and in the same name under the number 8333 in the amount of $1,773.77. The inference is that "Crocco" was the woman's name before marriage and that the bank accounts held over from that period. She also had an account in the First National Bank of Belleville in the name of Santa Piro in the amount of $4,320.48, and the inference is that the moneys so deposited came to her, in one way or another, after she was Mrs. Perrone. She held a few securities of small value and an undivided interest in a real estate property consisting of "a two family house and a small store." All of those items were Mrs. Perrone's separate assets and were property reported. There is no dispute concerning them. The only controversy is about the special deposit mentioned in the next paragraph.

On May 22, 1943, an account numbered 9572 was opened by Joseph Perrone in the savings department of the Bank of Nutley in the names "Sarah Perrone or Guiseppe Perrone" with a deposit of $204. That deposit was supplemented by others, to wit: October 7, 1943, $315.36; November 6, 1943, $192; February 14, 1944, $280; December 5, 1947, $175; all of them made by Guiseppe Perrone. There were no withdrawals until October 29, 1948, when the entire deposit, with interest, $1,213.06, was taken out by Guiseppe Perrone. When the original deposit was made the card was signed "Guiseppe Perrone" by Perrone's own signature and "Sarah Perrone" by her mark. The fair inference is that Guiseppe Perrone could not write other than to sign his name, because the deposit slips were all made out by a bank clerk, and Perrone, when asked by counsel for the exceptants, "Is any one of them (the deposit slips) in your handwriting?" answered, "No, because I can't." Further inferences are that Sarah

Perrone could not even write her name and that the husband and wife were simple Italian people, industrious, thrifty and unlettered.

Perrone testified that his wife was sick for from six to ten years before her death and that for the last two years of her life she was unable to do any work at all; that when he married her she ran a small candy store; that he worked for the Federal Leather Company but left that employment in 1943 because of his wife's illness; that he took over the store, with greatly depleted stock, reconstructed the fixtures (shelving, etc.), made purchases and sales in his own name and altogether operated the business and owned it; that the money made in the store was not enough to meet their expenses and therefore he did outside work; that for a couple of years he worked in this way for the Nutley Park and earned about $38 or $40 per week; that he did garden and lawn work for various people; that he worked "night and day"; and that the deposits in the bank were all the fruits of his own labor.

The dates of the deposits are significant. With the exception of the December 5, 1947, deposit, they were of an earlier period when things were better and when, it may be assumed, the income had not been seriously reduced, and the outgo increased, by the incidents of an ailing wife and her inability to team up as theretofore. It is quite possible that the conjunction of the little candy business, the ownership and operation of which had been taken over by Perrone in 1943, and Perrone's outside employments were sufficient to produce that volume of savings. I have no difficulty in believing that Perrone, having that little accumulation, originated and supplemented the deposit in such a manner as, in his thought, would cause it to go immediately to his wife if he should die first; and he testifies that such was his act and his purpose.

It is understandable that there should be minor discrepancies and uncertainties in Perrone's testimony. An effort was being made to take from this ignorant laboring man, in favor of collateral relatives of his wife, a nest egg that he, whether rightly or wrongly, believed was his; and he was being rigidly

examined in the unfamiliar and awesome surroundings of a court room. Counsel for exceptants demanded and was accorded the privilege of examining him in chief by the method of cross-examination—an examination upon which the witness entered without knowledge of what he would be asked. For illustration, while on the witness stand December 6, 1949, he was suddenly pressed, without earlier notice that the information was being sought, to state where he got checks for $47.86, $36 and $41.50 which appeared on the deposit slip of the October 7, 1943, deposit. The examination continued:— "Q. Did the checks come from the store? Answer yes or no." To which the answer was, "I don't know; I don't remember; it's so long ago." That is typical of the way some of the examination went, and it is not indicative of evasion. One check in the amount of $100, listed on the slip of the deposit of December 5, 1947, he was able to recall. He had taken care of the lawn of Mr. Gilmore of Nutley all summer, and Mr. Gilmore, when he returned from an extended absence, gave Perrone a check for one hundred dollars, and that was the check. This was a specific explanation, with name, amount and date. There was no attempt at contradiction. Here, surely, is an item of $100 positively proved to have been Perrone's earnings. Perrone, although the personal representative of the deceased, was not permitted to tell, on being questioned by his attorney, of the arrangement he had with his wife about the bank account. The objection was made and sustained that the proof would be a conversation with the deceased. Whether or not the stated reason was adequate need not now be discussed as the point is not raised or argued. It is, however, proper to note that the absence of a more definite statement of the transaction between Perrone and his wife by which the disputed account was opened is due, not to withholding by Perrone, but to objection by exceptants' counsel.

Outstanding features of Perrone's testimony relate to his wife's illness; the length and extent of it; her increasing and, finally, total incapacity for work; his taking over the

store and operating it; his outside employments and labors. If there were any semblance of untruth in those major and notorious facts, disproof would be easy, particularly by the exceptants who are relatives of the wife. There is not a word of testimony in contradiction of anything that the husband testified to. Granting the truth of that testimony, sources of income which are easily explainable opened up for the husband. There is no exception to the omission from the inventory of merchandise or good will of the candy business, which seems to be a tacit concession that the ownership was truly in Perrone.

The proof will not sustain a finding that the estate tax report stated the candy store business or any part of it as an asset of the estate of Sarah Perrone. The sheet referred to is entitled "Schedule 'A'—Real Property." The column heading is: "Decedent died possessed of an interest in the following described real property located in the State of New Jersey." The entry names the block number, the street number and the deed books of recording, it gives the assessed value of the property as $2,600, and the value of the equity (an undivided one-half interest) as $1,300, and refers to the property by this explanatory description: "Deceased was possessed of an undivided one-half interest consisting of a two family house and a small store. House is about 100 years old, having been moved to present location about 1911." There is nothing in the exhibit to suggest that the real estate premises thus noted and described were meant to include the business conducted in the "small store." It would have been wholly improper to include an item of personalty on that sheet; and Perrone's testimony that he owned the business clearly, as he states, relates to merchandise and contents and not at all to the store building.

It is difficult to understand the effort of counsel for respondents to indicate an inconsistency in Perrone's testimony on that point, as it is also difficult to understand his argument that Perrone, at the time of withdrawing the deposit now in controversy, represented that his wife was living. There is

enough in the record to make that contention plausible on its face and also enough, on study, to condemn it as without support. The sole authority for the assertion is the check of withdrawal, an exhibit in the record. That check contained a printed clause: "I hereby certify that the joint depositor with me on the account is living—deceased—at the time of this withdrawal." The word "deceased" is stricken. And that, so the argument is, constituted the misrepresentation that the wife was then living. The fact which absolutely nullifies the contention and proves that the striking of the word "deceased" instead of the word "living" was somebody's error—probably that of the bank clerk who prepared the paper for Perrone's labored signature—is that one of the counsel who sign the brief now before us for respondents brought out, at the trial, by the testimony of both Perrone and the bank officer, that when Perrone presented the check for withdrawal he brought with him and left with the bank the inheritance tax waiver from the State of New Jersey, which waiver was produced from the bank files at the trial by the bank officer and was, on motion of counsel for the exceptants, admitted in evidence as Exhibit E4. It is beyond comprehension that Perrone should present the bank with a formal instrument from the State authenticating the release of the account from the claim of the State for inheritance taxes of his dead wife and at the same time represent that his wife was living.

As to the matter of the two mortgages which stood in the names of husband and wife the proceeds from which, as appears by interchange of counsel before the same judge in a disconnected proceeding, Perrone collected after the wife's death and endorsed over to his own use. The mortgages, we learn from that source, were taken by husband and wife as purchase-money mortgages on the sale of real estate properties which the two had owned by the entirety. Perrone was of the belief that since the ownership of the mortgages was in both names the right of survivorship adhered to them in the same manner as it had adhered to the property titles. There has been confusion in the minds of many persons, even of

lawyers and of judges, as to when an ownership by husband and wife, whether of land, chattels or intangibles, has the attribute of survivorship. It is not strange that Perrone should labor under a misapprehension on the same subject. While the irregularity was called to his attention, he readily admitted the transaction and agreed to make restitution on being told that he ought to do so. Litigation on that matter seems to have been quite unnecessary, and I fail to see therein any indication of corruption. Also, in justice to Perrone, it should be noted that apparently he was not present when counsel were discussing the mortgage situation with the court, and that there was no reason for him to be present. The suit about the mortgages had been settled and the conference was for the purpose of talking about allowances to counsel in that suit. True, under proper circumstances admissions by counsel may be taken as admissions against the client; but Perrone's counsel was here talking freely without any purpose or thought of binding his client by his utterances. How far statements thus made, and particularly how far statements by opposing counsel thus made, should, in the decision of another litigation, be held in derogation of the character and honesty of an absent client is, at the least, questionable.

The burden of proof in matters of charge is upon an exceptant. But, regardless of where the burden lies, I am persuaded by the testimony that the money which went into the account in question was the property of Joseph Perrone, and, upon that conclusion of fact, that the item was not a matter of charge against the executors and was properly omitted from the inventory.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING and ACKERSON—5.

*For reversal*—Justices CASE and WACHENFELD—2.