**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5617-14T2

IN THE MATTER OF THE ESTATE
OF MARY JANE LYNCH, DECEASED.

_____

Argued February 28, 2017 — Decided November 8, 2017

Before Judges Messano and Suter.

On appeal from Superior Court of New Jersey,
Chancery Division, Probate Part, Gloucester
County, Docket No. P-07-788.

Michael J. Confusione argued the cause for
appellant/cross-respondent Deborah Williams
(Hegge & Confusione, LLC, attorneys; Mr.
Confusione, of counsel and on the briefs).

Ronald P. Sierzega argued the cause for
respondent/cross-appellant Estate of Mary
Jane Lynch (Puff & Cockerill, LLC, attorneys;
Mr. Sierzega, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Deborah Williams (Williams) appeals eight orders[1] entered in

the underlying probate case involving the Estate of Mary Jane

_____

[1] These include orders dated June 30, 2015; June 2, 2015; January
28, 2014; June 4, 2012; March 16, 2012; April 8, 2011; March 13,
2009; November 18, 2008.

Lynch (Estate). We affirm the orders except the dollar amount of the surcharges set forth in the June 30, 2015 order. We exercise our original jurisdiction under Rule 2:10-5 to modify the amount of the surcharges.

I.

Mary Jane Lynch and her husband had two children, Deborah Williams (Williams) and John Lynch (Lynch). Mary Jane's husband pre-deceased her.

In 1992, Mary Jane executed a will and declaration of trust (will). Under her will, her personal property was to be distributed equally to Williams and Lynch. The residuary estate was left to the Mary Jane Lynch Family Trust and the assets there divided equally between the two children, who were also the co-trustees. Under the will, Williams was to be co-executor with Lynch.

In 2005, Mary Jane was diagnosed with colon cancer. She died June 19, 2007. Shortly after Mary Jane's death, Williams renounced her position as co-executor, leaving Lynch as the sole executor.[2] The estate consisted of a house with furnishings, a car, and bank accounts. Lynch represented to Williams that its value was about 1.9 million.

---

[2] We do not know if she renounced her position as co-trustee.

Only two verified complaints have been filed in this matter. The first was in 2008, after Williams and Lynch disagreed about the appraised value of the house. Williams filed an order to show cause and verified complaint requesting to be renamed as co-executor, ordering Lynch to cooperate with her, and restraining him from dissipating or encumbering any assets of the Estate. Lynch's answer and counterclaim sought to compel Williams to account for property she allegedly took from the estate, sought damages for breaching the contract to purchase the house, and for rent for the period of time she resided there.

The court ordered Lynch to provide a full and complete accounting. The parties were to exchange discovery and the case was listed for trial. Lynch alleges he provided an informal accounting by November 2008. By March 2009, the case was dismissed because of Williams' failure to provide discovery.

Although there was then no complaint pending in the Probate Part, both parties filed motions: Lynch to sell the house and Williams for a formal accounting. In her affidavit in support of the formal accounting, Williams alleged that Lynch took monies from a joint account at Commerce Bank that he shared with Mary Jane, that he took the contents of the house without paying for them and, during Mary Jane's lifetime, had been paying himself $5000 per month from their mother's assets.

The court approved the sale of the house and those funds were placed in escrow. Lynch was to provide "documentation in support of accounting and documentation of any of mother's money/assets handled by him for a period of [five] years prior to mom's death." Shortly after, Williams' notice in lieu of subpoena to obtain the personal financial records of Lynch was quashed, but she was permitted to subpoena the "brokerage and financial records of her mother."

In June 2011, Lynch filed the second order to show cause and verified complaint in this matter. That verified complaint sought approval of the formal accounting, which was attached; permission to allow distributions per the accounting; and payment of fees for the estate attorneys, Puff & Cockerill, LLC. Williams filed an answer and exceptions.[3]

The trial court proposed to disallow $29,691.54 of the items listed in the accounting as either not chargeable to the estate or lacking in detail. The court then allowed the parties to "provide additional proofs, clarification and a revised accounting" in response to the court's proposed findings.

---

[3] The record does not include a copy of the answer or the exceptions. However, the trial court's June 4, 2015 opinion makes reference to them.

The parties made additional submissions. Following oral argument, the court entered an order on June 4, 2012, that "allowed" the "Revised Final Accounting" except for $29,691.54 in expenses that earlier had been disallowed. The trial court also disallowed as "improper" an enumerated listing of checks amounting to $132,500, that Lynch wrote for himself or family members while he was Mary Jane's power of attorney, and ordered that the amount of those checks be refunded or credited against Lynch's share of the estate. In addition, the court found that Williams had improperly withdrawn $47,000 from Mary Jane's bank account prior to her death and ordered that Williams refund these monies or that they be taken from her credit. The trial court ordered the parties to attend a mediation and arbitration to apportion the contents of the house. The court ordered that Mary Jane's "bank and investment account statements" be produced. It approved $46,237.17 in fees and costs for Puff & Cockerill, as counsel for the estate to which there was no objection. Lynch was to restate the accounting to reflect the court's decision with a calculation for the executors' fee. No appeal was taken from any provision of that order.

Williams retained new counsel, who filed a motion in January 2013 to reconsider the June 4, 2012 order that she repay $47,000, to ask for a final accounting of the estate, to request further

discovery to respond to the final accounting because it "makes reference or fails to make reference" to the disposition of shares of Exxon Mobil stock, and a certain margin account, which were open issues. Williams asked that Lynch be removed as executor because of his poor health. The motion did not mention removal for negligence, malfeasance or misfeasance.

Williams denied that she took $47,000 from the estate's funds. She contended the accounting was incomplete because it did not reference certain accounts, discuss a margin account at TD Ameritrade, the loan on the margin account, or explain why 2000 shares of Exxon Mobil stock were not distributed. She alleged Lynch's health no longer enabled him to serve as executor.

Lynch opposed the motion and cross-moved for reconsideration of the June 4, 2012 order. He contended that all requested documents had been provided "including all tax returns, every TD America Trade account statement, every joint account statement, all banking records, and even a specific signed statement as to how the margin account was handled." He denied that he was not able to handle his duties as executor. He requested an executor's commission based on the amount of money in the estate. He denied that he was Mary Jane's power of attorney and objected to the $132,500 surcharge. Williams made additional submissions elaborating on the same themes.

6                                                          A-5617-14T2

The trial court heard the motions and reserved. The parties were permitted to engage in additional discovery. On January 28, 2014, the motions were largely denied without prejudice by the trial court, but counsel were to confer about the in camera inspection of "bank accounts for John Lynch family members."

In May 2014, without an order to show cause or verified complaint, Williams filed a motion to remove Lynch as executor, to appoint Williams in his stead, to order Lynch to return monies taken from the estate, to appoint a forensic accountant, to re-depose Lynch and for attorney's fees and costs. The motion further requested another formal accounting. This motion was supported by Williams' detailed certification that again alleged Lynch had taken monies from various accounts while Mary Jane was alive and after her death. The certification alleged that Lynch as executor had "violated and abused his duties" by not providing financial information and a host of other allegations largely involving money taken from Mary Jane's accounts before and after her death.

Lynch filed a cross-motion seeking reconsideration of the June 2012 order because he alleged he was not the attorney-in-fact for his mother. He requested an executor's commission, attorney's fees for the estate's counsel, and an order settling the estate. Following oral argument, the parties were ordered to attend mediation. When mediation with a retired jurist did not resolve

the motions, they were rescheduled, and the parties made additional submissions, which by now included the production by Williams of a detailed "forensic" accounting report by Forensic Resolutions, Inc.

On June 2, 2015, the court issued a written decision deciding the motions and on June 30, 2015, executed an order closing the estate. In the written opinion, the trial court approved payment to Williams for the forensic accounting report. The court denied William's request for counsel fees because she was not entitled to fees under Rule 4:42-9(a)(3) for probate actions or under Rule 4:42-9(a)(2) from a "fund in court" because she had not "aided directly in creating, preserving or protecting the fund."

The court denied the removal of Lynch as executor finding that it was "too late" in the process as the court already had approved the accounting in 2012 and also because both parties acknowledged removing funds from the estate. However, the court permitted Williams to file a complaint against Lynch "setting forth her claims against John Lynch that predate their mother's death and setting forth the relief she seeks which may include claims against John Lynch as Trustee of the Trust and an accounting of the $426,000 borrowed from the margin account between May 2005 and June 2007." The court cited to Donnelly v. Ritzendollar, 14

N.J. 96, 108 (1953) for the proposition that laches will not defeat a claim against a fiduciary under certain circumstances.

The court denied reconsideration of the surcharges assessed to Lynch and Williams. The court found that Lynch's motion for reconsideration of the issue was not timely. Even if he did not hold a power of attorney for his mother, the court explained that he was a joint owner of the convenience checking account with her and all of the money in the account was hers requiring him to repay the estate.

The court approved attorney's fees of $54,800 for Puff & Cockerill, the estate attorneys, and denied Lynch's request for reimbursement of out of pocket expenses. The parties were ordered to provide the specific accounting fees and executor's commission.

The final order closing the estate was entered on June 30, 2015. This awarded the fees to Puff & Cockerill as requested, $24,314 to Williams for the forensic accountant, $21,136 to Lynch as the executor's commission, and $42,750 to Williams as an adjustment, to reflect the net difference between Lynch's surcharge and Williams' surcharge. These appeals followed.

Williams appeals each of the orders entered in the case since 2008. She contends the court erred by not conducting an evidentiary hearing about Lynch's handling of the Exxon Mobil stock, the checks written to himself and family members and other

alleged malfeasance. If an evidentiary hearing is granted, Williams requests a different judge in a different county. She contends the court erred in considering the accounting submitted as a formal accounting because it did not document the value of Mary Jane's estate at the time of her death or the disposition of each asset. Williams asserts the court should not have allowed legal fees to Puff & Cockerill or an executor's commission to Lynch. Williams says that the court erred in surcharging her $47,000.

Lynch opposes the appeal, contending the court did not err. However, if an evidentiary hearing is ordered, Lynch requests limiting it to issues involved in the probate estate. Lynch filed a cross-appeal from the June 30, 2015 order to the extent it surcharged him $132,500, requesting the reversal of that portion of the order.

With the exception of the calculation of the surcharges, we find no merit in any of these contentions.

II.

A.

Williams contends that the court erred by not holding an evidentiary hearing on her claim that Lynch committed malfeasance and should be removed as executor of Mary Jane's estate. We discern no error by the court in resolving the issues before it

10

in a summary manner based on the submissions of the parties and argument of counsel.

We do not agree with Williams that because her 2008 complaint to resume appointment as co-executor was scheduled for trial in 2009, the complaint constituted a request for a plenary hearing on the alleged malfeasance issues. The issues in her complaint involved the sale of the house and disposition of its contents, not the Exxon Mobil stock and check transfers. The 2008 complaint was also dismissed in 2009 based on discovery violations. The record does not show it was reinstated.

In June 2011, Lynch filed an order to show cause and verified complaint to allow the final accounting and settle the estate. However, Williams' request for a hearing related to items of personalty that remained in the house before its sale and not other issues. The court referred the issue of personalty to mediation.[4]

Williams contends on appeal that there were factual issues regarding her request to remove Lynch as executor that required an evidentiary hearing. However, she filed a motion in January 2013, asking that Lynch be removed as executor for health reasons

---

[4] Mediation was not successful. However, Williams did not contest the value of the personalty listed in the final accounting, nor is that issue part of this appeal.

A-5617-14T2

and "inability to perform his functions as Executor," and not because of his conduct. It was not until Williams' motion in May 2014, that she asked to remove Lynch on the ground that he violated his fiduciary duty.

In probate, "[u]nless otherwise specified, all actions . . . shall be brought in a summary manner by the filing of a complaint and issuance of an order to show cause pursuant to R. 4:67." R. 4:83-1. The June 2011 complaint was filed by Lynch, not Williams, and sought approval of an accounting of the probate estate.[5] Williams was a defendant in that litigation.

By June 2012, the court had approved the accounting. There was no complaint for removal of the executor. Williams never filed a complaint against Lynch, naming him as a defendant in an individual capacity or as trustee of the trust, alleging misfeasance, malfeasance or wrong doing and seeking his removal on these grounds. The verified complaint for an accounting did not concern non-probate assets such as the trust that was holding the Exxon Mobil stock. Williams' counsel acknowledged the shortcoming in the pleadings in July 2013, stating, "I think we're

---

[5] "An action to settle an account on an estate trust is a formalistic proceeding, unique to probate. See R. 4:87-1(a). Its stylized format involves a line-by-line review on the exceptions to an accounting." Higgins v. Thurber, 205 N.J. 227, 229 (2011). It is a summary proceeding.

going to need an amended complaint to bring the issues for this missing money [from the MJLF Trust] to light and get them on the table, because right now I think the pleadings are inadequate for what we are doing." No other order to show cause or complaint was filed, only motions.

Williams was not prejudiced by the lack of an evidentiary hearing regarding the non-probate assets. In its June 2, 2015 order, the court expressly allowed Williams to file a new action "setting forth her claims against John Lynch that predate their mother's death and setting forth the relief that she seeks which may include claims against John Lynch as Trustee of the Trust . . . ." Therefore, the court did not abuse its discretion by not conducting an evidentiary hearing on non-probate assets or claims that Lynch should be removed as executor.

B.

By order dated June 4, 2012, the court approved the final accounting, stating that "[t]he Revised Final Accounting is allowed, except for those entries which were denied by the court on the record on May 31, 2012, which denials are noted on the

13

original revised accounting with the Surrogate."  No appeal was taken.[6]

Both parties request a review of the surcharges entered as part of that order.  We find no error in the trial court's decision on the formal accounting and its order directing a surcharge, but we modify the amount of the surcharges to reflect the record.

The court determined that both Williams and Lynch admitted to taking money from Mary Jane's accounts that she maintained to pay her ongoing expenses.  However, there was no proof, save for their own statements, that Mary Jane intended the moneys as gifts. The court was not required to accept these statements as proof of donative intent.  See, e.g., In re Estate of Perrone, 5 N.J. 514, 521-22 (1950).

Williams acknowledged in certifications and her deposition that she took money from one of her mother's accounts near the end of her life.  However, it was error to surcharge her $47,000 because that figure came from an unsupported statement made by Lynch's attorney.  We exercise our original jurisdiction under Rule 2:10-5 to revise the surcharge.  See Pressler & Verniero, Current N.J. Court Rules, comment on R. 2:10-5 (2017) ("The

---

[6] Generally, we "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available . . . ."  Nieder v. Royal Indem. Ins. Co., Inc. 62 N.J. 229, 234 (1973).

exercise of original jurisdiction is also particularly appropriate to terminate lengthy, burdensome, and unnecessary further litigation."). Williams admitted to taking $8400 from Mary Jane's Ft. Billings account. We revise the surcharge to reflect that figure.

Lynch contends that he was not power of attorney for his mother and should not be surcharged. However, the court found that as a joint owner of a convenience account, where 100% of the monies were Mary Jane's, he was in a position of a fiduciary. Under N.J.S.A. 17:16I-4, "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit." There was no dispute that the funds in the accounts were Mary Jane's and not Lynch's. Lynch admittedly signed checks payable to cash for himself and family members. Lynch was properly surcharged for the inter vivos transfers and required to repay them.

On appeal, Lynch contends that some of the checks were signed by Mary Jane and the record reflects this. Those checks, amounting to $22,500,[7] are to be excluded from the surcharge. See R. 2:10-

_____

[7] Specifically they are: (1) 8/15/05: $5,000 check to Nathan Lynch, (2) 10/14/2005: $5,000 check to Nathan Lynch, (3) 3/24/2006: $10,500 check to Mary Jane Lynch, and (4) 12/05/2006: $2,000 check to John & Maggie Lynch.

A-5617-14T2

5. We modify Lynch's surcharge to $110,000 by deducting the amount of these checks.

Williams is critical of the accounting, contending it was merely an expense list. However, it was Williams' burden to prove exceptions. See Perrone, supra, 5 N.J. at 521 ("[T]he burden of showing that there are more assets in an estate than are acknowledged by the executors in their inventory or account rests upon the exceptants, and that their contentions must be sustained with reasonable certainty."). She did not include her exceptions to the accounting in this record. She never appealed the court's approval of the final accounting in June 2012. Williams does not contest the judge's disallowance of certain expenses listed in the formal accounting.

Williams contends the court erred in not requiring Lynch to account for every probate and non-probate asset. However, the court's June 2015 decision and order permit Williams to explore "her claims against [] Lynch that predate their mother's death," including "claims against [] Lynch as Trustee of the Trust and an accounting of the $426,000 borrowed from the margin account between May 2005 and June 2007." We are satisfied the court resolved what issues were before it and preserved other issues for the parties' future handling.

We review the assessment of attorney's fees under an abuse of discretion standard. Mears v. Addonizio, 336 N.J. Super. 474, 479-80 (App. Div. 2001). We find no error in the trial court's allowance of attorney's fees for Puff & Cockerill as counsel for the Estate of Mary Jane Lynch.

There was clear authority for the executor to retain counsel for the estate. See N.J.S.A. 3B:14-23(1). The court rules permit the payment of counsel fees in a probate case. R. 4:42-9(a)(3). "This Court has interpreted Rule 4:42-9 as generally 'codif[ying] those specific instances where, in the absence of a separately enabling statute or contract, fee shifting is permitted.'" In re Estate of Folcher, 224 N.J. 496, 507 (2016) (alteration in original) (quoting In re Estate of Vayda, 184 N.J. 115, 120 (2005)).

Williams did not object to the attorney's fees that were awarded to Puff & Cockerill in June 2012 in the amount of $46,237.17. That issue is raised for the first time in this appeal. We, therefore, decline to consider this issue. See Nieder, supra, 62 N.J. at 234.

On June 30, 2015, the court awarded $54,800 "for work done on behalf of the Estate," finding that "[t]he certification supports the award of $54,800." Williams contends the fees awarded

to Puff & Cockerill should have been apportioned between the estate and Lynch personally. However, Lynch was not sued individually or as trustee. Given that there were no claims against Lynch individually, the court did not abuse its discretion in awarding fees for the estate's counsel without the requested apportionment.

### D.

Similarly, we find no abuse of discretion in the court's order awarding an executor's commission to the executor. See In re Estate of Moore, 50 N.J. 131, 149 (1967) (applying abuse of discretion standard). Williams contends that Lynch should not be entitled to any commission. Certainly, the court has the ability to reduce the commission or eliminate it. See N.J.S.A. 3B:18-4; N.J.S.A. 3B:18-5. However, without any direct claims against Lynch here, we cannot say the court abused its discretion in allowing the executor the statutory commission.

### E.

Given our opinion, we have no occasion to remand the case, making moot Williams' request to remand to a different county and a different venue. Even if the result were different, we would unequivocally deny the request. We have thoroughly reviewed this record, finding absolutely no basis for the claim of bias. Disagreement with the court's decision is not a basis to request recusal. See State v. Marshall, 148 N.J. 89, 186 (1997) ("[B]ias

is not established by the fact that a litigant is disappointed in a court's ruling on an issue.").

Affirmed as modified.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION