**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2945-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

T.W.,

    Defendant-Appellant.

_____

> Argued March 24, 2026 – Decided June 24, 2026
>
> Before Judges Rose and Torregrossa-O'Connor.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 11-02-0231.
>
> Eric V. Kleiner argued the cause for appellant.
>
> William P. Miller, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, of counsel and on the brief).

PER CURIAM

Defendant T.W.[1] appeals from an April 24, 2024 Law Division order denying, after an evidentiary hearing, her application for post-conviction relief (PCR) which alleged ineffective assistance of counsel. Because we are satisfied the court did not abuse its discretion, we affirm.

## I.

Defendant asserts the PCR court abused its discretion in finding her plea counsel was not ineffective for failing to investigate the case and pursue defenses before she pled guilty. We derive the relevant facts from the PCR record and our prior decisions, which we incorporate by reference. See State v. [T.W.], No. A-5505-10 (App. Div. June 20, 2013) ([T.W.] I); State v. [T.W.], No. A-0834-13 (App. Div. Dec. 5, 2014) ([T.W.] II); State v. [T.W.], No. A-1438-15 (App. Div. July 12, 2018) ([T.W.] III).

## A.

Defendant, born in Guyana, came to this county at approximately twelve years old and soon thereafter began working for the victim and her husband in their home from the mid-1990s until about 2004. In December 2010, the victim, then an eighty-eight-year-old widow, alerted police to an extortion plot in which

---

[1] We use initials to protect defendant's privacy interests. R. 1:38-3(a)(2), (c)(12), (f)(4). We also acknowledge defendant indicates her given name is B.H.K. To avoid confusion, we reference her as defendant throughout.

the perpetrators demanded $500,000 from the victim in exchange for video recordings of sexual encounters between her late husband and defendant.

We previously summarized the investigation that followed:

> According to the State's version of the crime, [co-defendant Rayan] Persaud initially approached the widow at her home in Bergen County, accompanied by a woman other than defendant. The victim notified the police. With her consent, police recorded subsequent telephone conversations in which Persaud threatened the widow that he would disclose an embarrassing tape if she did not pay $500,000. She offered to make an initial payment of $75,000 at a meeting at her home.

> Police surveilled the area the day of the meeting. They observed defendant in the vehicle with Persaud and a driver. However, Persaud aborted the meeting after the victim refused to meet him outside her house, insisting instead that he come inside (where she was accompanied by police). Meanwhile, defendant left the vehicle and headed on foot to a bus stop. Persaud attempted to drive away. Police arrested all three. Persaud gave a statement admitting to the scheme, stating that defendant provided him with the sexually explicit videotapes; identified the widow to him; and provided him with her telephone number and address.

> [[T.W.] III, slip op. at 4-5.]

On April 4, 2011, one week after her arraignment, and before all discovery was provided, defendant pled guilty to second-degree attempted extortion, N.J.S.A. 2C:5-1 and :20-5(c), and was later sentenced as a third-degree offender

A-2945-23

in accordance with the plea agreement to three years' imprisonment. In providing the factual basis for her plea,

> defendant admitted that in December 2010, she attempted to extort "money or property" from [the victim] by threatening to disclose a tape recording depicting [her] late husband engaged in sexual relations with defendant. She testified she participated in the extortion scheme with . . . Persaud. She agreed she participated in telephone and in-person contacts with the victim. In addition to her signed plea forms, defendant signed a guilty plea stipulation, stating that she attempted to obtain money from the widow by threatening to disclose an embarrassing recording.
>
> [[T.W.] III, slip op. at 2-3.]

According to her presentence report, "When asked if there were any factors contributing to the commission of the instant offense[,] . . . defendant stated that while he was still alive, [the victim's husband] told her to do it and made a voice recording of himself saying he wanted her to have the money." Id. at 3-4 (alterations in original).

On direct appeal, defendant raised ineffective assistance of plea counsel as the "sole basis for challenging her convictions." [T.W.] I, slip op. at 2. We held defendant should have raised these claims by PCR petition, id. at 4-5, but vacated defendant's sentence and remanded for resentencing, id. at 8.

A-2945-23

There we summarized her claims:

> Defendant essentially argues that her attorney was ineffective by failing to pursue her defense to the charge that she engaged in a scheme to extort property from [the victim]. Defendant, . . . an undocumented immigrant, alleged in an affidavit the victim's late husband had sexually abused and exploited her as a teenager, while she served as a domestic worker in the couple's household. She asserted he made video recordings of their sexual relations. He also allegedly promised defendant $500,000 upon his death as evidenced by certain other recordings. However, she alleged that she played no willing part in the attempt to obtain money from the [victim], and actually attempted to prevent [Persaud] from showing the recordings to the woman.
>
> [Id. at 2.]

Thereafter, on appeal after resentencing, we affirmed defendant's sentence, but again remanded to the trial court, determining the court failed to consider defendant's motion to vacate her guilty plea. [T.W.] II, slip op. at 12-13.

On remand, the trial court denied the motion to withdraw the plea, and on appeal, we affirmed. [T.W.] III, slip op. at 1, 26. We concluded the trial court properly found the evidence supported defendant's guilty plea, as defendant admitted she "took substantial steps, by providing [Persaud] with the tapes and the victim's information, in the course of conduct designed to culminate in the extortion of $500,000 from the victim." Id. at 19-20. Like the trial court, we

5

rejected defendant's argument she renounced participation in the crime before it took place because renunciation implies she at one point assented to committing the offense which would contradict her "December 2011 affidavit [certifying] she never intended to commit extortion." Id. at 20-21. We noted "[t]he facts essential to her claim of innocence [we]re neither 'credible' nor 'plausible'" and thus "fairly concluded that defendant's version of events simply did not ring true." Id. at 21. Further, we determined "there [wa]s no evidence—except her own say so—that she took the embarrassing materials when she left the car, in order to foil Persaud's plan" and, instead, "her admission of guilt is supported by the undisputed facts that she provided the tapes to Persaud and accompanied him on two trips to the victim's town." Id. at 21-22.

In analyzing the Slater[2] factors, we acknowledged "defendant contend[ed] her attorney was ineffective by failing to review discovery materials and misinforming her about the immigration consequences of her plea," but determined "even if [discovery materials] contained all that defendant

_____

[2] See State v. Slater, 198 N.J. 145, 157-58 (2009) ("[T]rial judges are to consider and balance four factors in evaluating motions to withdraw a guilty plea: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.").

6

allege[d], . . . [i]t would not have established her claim that she was ignorant of Persaud's scheme[] and did not participate in it." Id. at 22-23. We similarly rejected defendant's argument regarding her lack of awareness of immigration consequences as well as her contention "she ple[d] guilty because she was suffering from the emotional and psychological effects of years of abuse," as "she has presented no compelling evidence that any emotional or psychological condition led her to plead guilty, as opposed to maintain her innocence of the charges against her." Id. at 23-24.

B.

After the Supreme Court denied defendant's petition for certification, State v. [T.W.], 236 N.J. 623 (2019), defendant subsequently filed her petition for PCR. Defendant proffered certain documents and information in support of her petition, contending plea counsel failed to investigate or explore defendant's mental health and her claims that she had suffered sexual abuse and human trafficking, or the details of the offense which would have supported a viable defense to extortion. These materials included: defendant's mental health records; "Chain of Custody documents";[3] a 2018 expert report on sex trafficking

---

[3] These documents reflect lists and images of items recovered by police from Persaud's car, including twenty CD recordings, a digital camera, and an audio recorder. No document indicated any items were found on defendant's person.

7

victimization;[4] defendant's 2018 T-Visa;[5] and "GPS view and measurements" of the distance between the bus stop and the victim's house.

Defendant's mental health records around the time of but after the offense described defendant as "anxious" and presenting with "PTSD" and "depression." Jail records in the months between her indictment and sentencing described defendant as "very depressed and hopeless." Records from 2012 to 2015 included two "Psychological Report[s]" prepared by Leanh Nguyen, Ph.D., dated February 20, 2012 and September 14, 2015. In the 2012 report, Dr. Nguyen found defendant's "personality style" was indicative of "a previous history of chronic and extreme abuse." The doctor opined defendant's

---

[4] In this report, Dorothy Laster, an expert in international relations and human trafficking, opined defendant "ha[d] been victimized by the traffickers in the way she describe[d]" finding defendant "consistent"; "credible"; and "a person of good moral character." Laster also offered negative opinions about the conduct of law enforcement and attorneys in the criminal case.

[5] This report included an Approval Notice for the receipt of defendant's "T Nonimmigration Status" dated February 2018. On its website, the United States Department of Homeland Security advises "T nonimmigrant status . . . enables certain victims of a severe form of trafficking in persons to remain in the United States for an initial period of up to [four] years if they complied with any reasonable request for assistance from law enforcement in the detection, investigation, or prosecution of human trafficking . . . ." Victims of Human Trafficking: T Nonimmigrant Status, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/humanitarian/victims-of-human-trafficking-t-nonimmigrant-status (last visited June 2, 2026).

A-2945-23

functioning indicated PTSD relating to "sexual violation, imprisonment, [and] deportation" in addition to "a diagnosis for an episode of Major Depressive Disorder." (Emphasis omitted).

Dr. Nguyen's 2015 report, derived from a supplemental evaluation, reflected: "[a]t the time of her arrest[, defendant] had not yet processed her history of exploitation in the hands of the [victim's] family" constituting "a state of repression and denial"; "the criminal arrest was traumatizing" due to the "the betrayal and erasure by [the victim's] denial of their history"; "the betrayal and intimidation . . . by her then-attorney were an additional violation of her sense of agency and trust"; and defendant felt she "had no choice but to accept her lawyer's advocating for a guilty plea bargain." Dr. Nguyen opined defendant's "judgment behind her plea bargain" was "impaired" and concluded "[t]here was no indication that during this period she was . . . planning to exact revenge against her abusers." Additionally, the records reflect defendant had a brief psychiatric hospitalization in September 2015 following the victim's deposition in defendant's civil lawsuit against the victim's late husband's estate.

After reviewing the petition and hearing arguments, the PCR court ordered an evidentiary hearing to "determine whether [plea] counsel's having an incomplete discovery file led to per se ineffective assistance on the part of [plea]

9

counsel"; "evaluate whether further investigation and review of the case would have rendered th[e renunciation] defense viable at trial had defendant-petitioner elected not to plead guilty and proceed to trial"; and "determine whether [plea] counsel adequately investigated and/or considered raising defenses related to defendant-petitioner's mental health issues and, if he failed to do so, whether this failure to do so constituted ineffective assistance of counsel." (Emphasis omitted). As the PCR court explained, the evidentiary hearing was to address "the newly discovered evidence issue and whether [plea] counsel was ineffective in allegedly failing to investigate defendant['s] status as a human trafficking victim and her mental health status."

The hearing proceeded over two days in 2023. The court heard testimony from defendant and her plea counsel.

Defendant testified about abuse she suffered as a child, first by her father, then at age twelve by her father's friend after being illegally trafficked to this country, and then by the victim's husband for years. She described working as a house cleaner for the victim and her husband, and alleged the victim's husband sexually abused her from approximately age thirteen to age twenty-four. She testified the victim informed her that "having sex with her husband" was part of the job. Defendant again alleged the victim's husband secretly recorded their

sexual encounters over the course of the abuse, but later, after a cancer diagnosis, apologized for the abuse, confessed to filming her and gave her the recordings, and suggested defendant use them to exchange for money from the victim after his death. Defendant indicated she provided the recordings to Persaud for safekeeping. When asked why she did not destroy or throw them away, she claimed she kept them because they were her only proof of identity and presence in the United States.

Defendant again claimed Persaud viewed the tapes and offered assistance in attempting to extort money from the victim, but defendant declined. She admitted travelling to New Jersey with Persaud and another individual, but claimed they were simply "look[ing] at storefronts" for Persaud's business. She claimed they travelled to New Jersey again the day before and the day of her arrest, but was unaware of Persaud's plan until they were minutes away from the victim's house, when Persaud disclosed he had been talking to the victim who told him to bring defendant to collect the money. Defendant thought "it w[ould] be good to see [the victim] and give her these tapes and like hurt her feelings and crush her feelings and embarrass her," but then decided she "want[ed] no part of it" and exited the car with a bag containing the recordings, believing her co-defendant would be unable to get the money without them. She later

clarified, she would have gone "through with this just to embarrass [the victim] but not because of the money."

Defendant claimed she first met plea counsel days after her arrest and explained to him the abusive history with the victim and her husband. Counsel met with her again at the jail before her arraignment, but did not discuss possible defenses or conduct investigation into her description of events, and she felt counsel did not believe her. She testified she advised him of her immigration status. Defendant indicated she met with counsel at the courthouse before the arraignment, but he offered no discovery or information other than to say the victim denied knowing her. At the arraignment, counsel advised the court discovery was not yet complete.

Defendant testified she next met with plea counsel when he came to the jail after the arraignment and advised there had been a plea offer of "three [years] flat," and she would be out of prison in one year. She claimed he told her the plea would not impact her immigration status, but if convicted and sentenced to ten years, she would be deported. She recalled plea counsel said "he didn't believe [her]" and "g[ot] angry because [she] kept telling him [she] didn't do it." He provided her with written plea forms which she did not sign at the time.

A-2945-23

A week after the arraignment, defendant was brought to the courthouse where she met with plea counsel and went over the plea forms. She claimed counsel did not advise her of her rights and instead insisted she sign the form or she would "get more time." She testified she would not have pled guilty had she been advised about the defenses of "abandonment or renunciation."

Defendant conceded she provided the victim's contact information to Persaud, but claimed she did so for business purposes, "[s]o they could talk about renting [a] space," and never attempted to warn the victim of Persaud's plan. She further admitted she was not under psychiatric care at the time of her plea, never told plea counsel she "did not have [the] mental ability" to plead guilty, or "w[as] confused about the plea form or process," and never reported mental health concerns in the letters she wrote to the sentencing court.

Plea counsel repeatedly affirmed, contrary to defendant's testimony, he "[went] over the discovery with [defendant]." He described going to the prosecutor's office and police department after defendant's arraignment to "view[] the discovery" and "listen[] to the [audio] tapes" which he had not reviewed prior to the arraignment. He acknowledged he did not hire any experts or investigators. Regarding the brief period between arraignment and plea, he stated, "There was enough information . . . to come to a conclusion . . . there

13

was . . . ample proof of her involvement and . . . the plea offer appeared to be fair in light of . . . the discovery."

He also agreed he never discussed the defense of renunciation with defendant because it was not a "strong" defense. In particular, Persaud provided a statement to police detailing defendant's role in the extortion plot. He testified his practice was to provide discovery to his clients, and he recalled discussing with defendant "the pros and cons" of her case and her role in the offense, explaining "[i]t appeared that she was involved."

Plea counsel stated defendant "did not express" she had any mental illness or had suffered sex trafficking and abuse. He indicated she never advised she "was suffering from a mental health illness that prevented her from going forward" or "from knowingly and voluntarily entering into th[e] plea agreement." He confirmed defendant never suggested "she didn't understand" the proceedings or the plea she entered. He also explained he was aware that defendant was not a United States citizen at the time and that he did not assure her she would not be deported should she plead guilty, but "likely told her that she would have to contest removal." He recalled recommending she and her family contact an immigration attorney.

A-2945-23

At the close of all evidence, PCR counsel argued plea counsel was deficient in advising defendant regarding her rights and the strengths and weaknesses of the State's case, and in not investigating the case and available defenses. PCR counsel contended if defendant proceeded to trial "[s]he very well could have hung the jury or been acquitted." He claimed English was not defendant's first language, and discovery was incomplete, leaving plea counsel insufficient time and information to evaluate the case and advise defendant.

The PCR court denied defendant's petition in its entirety by order and accompanying written opinion on April 12, 2024. After detailing the procedural and factual history, standard of review for PCR petitions, arguments, and testimony at the evidentiary hearings, the court denied PCR. The court found defendant did "not demonstrate[] how [plea counsel's] failure to inform her of the affirmative defense of renunciation amounts to deficient performance of counsel." The court determined plea counsel's testimony was credible and credited his representation that he "exercised his professional judgment after reviewing the weight of the evidence against defendant[] and believe[d] the renunciation defense was 'not very strong.'" By contrast, the court "did not find defendant['s] testimony to be credible regarding a number of issues," particularly "regarding her reason for being in the car with [her co-defendant],"

and that she "did not become aware of the extortion plot until the parties were on the way to the [victim's] home." The court also concluded defendant's account that the victim's husband surreptitiously recorded her and gave her the recordings to later extort the victim lacked credibility. The court indicated it "believe[d] the State's theory of the case, which defendant[] pled guilty to before the trial court, that she made the videos with the intent to extort money from the [victim]."

The PCR court further rejected defendant's claim plea counsel was inadequate in not "investigat[ing] [her] mental health" as defendant "failed" to make the requisite showing. The court noted both defendant and plea counsel testified defendant never advised counsel she "was suffering from any mental illness or had a 'diminished capacity' that would render her guilty plea involuntary, unknowing or unintentional." "[U]npersuaded . . . that [plea counsel] had any obligation to investigate . . . defendant['s] mental health when he could not have known there was any such issue" or that any "imperfect English or lack of higher education contributed to an involuntary or unintentional guilty plea," the court found defendant "was capable of speaking with her attorney in English and did not require or request an interpreter at her plea hearing." The PCR court also rejected defendant's claims regarding her

16

knowledge of immigration consequences.  Although noting "the short amount of time between defendant['s] arraignment and guilty plea" the court found plea counsel exercised professional judgment and was not deficient.

On appeal, defendant argues:

POINT I

[PLEA] COUNSEL WAS INEFFECTIVE FOR FAILING TO INFORM . . . DEFENDANT ABOUT A VIABLE DEFENSE TO THE CHARGE OF ATTEMPTED EXTORTION ARISING FROM HER RENUNCIATION OF PURPOSE TO COMMIT THE CRIME.

POINT II

[PLEA] COUNSEL'S INADEQUATE INVESTIGATION, PREPARATION, AND PERFORMANCE AT THE TIME OF THE GUILTY PLEA VIOLATED . . . DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

POINT III

[PLEA] COUNSEL WAS INEFFECTIVE IN FAILING TO INVESTIGATE A MENTAL HEALTH-RELATED DEFENSE.

In response, the State claims for the first time on appeal that defendant's arguments are procedurally barred.  It alternatively asserts all her claims lack merit.

A-2945-23

II.

A.

"In reviewing a PCR court's factual findings based on live testimony, an appellate court applies a deferential standard; it 'will uphold the PCR court's findings that are supported by sufficient credible evidence in the record.'" State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). Likewise, we accord deference to the PCR judge's firsthand assessment of witness credibility. Ibid. (citing Nash, 212 N.J. at 540). This court is "not bound by and give[s] no deference to the legal conclusions of the PCR court." State v. Harris, 181 N.J. 391, 415 (2004). Accordingly, the legal conclusions of a PCR court, as well as any mixed questions of law and fact, are reviewed de novo. Id. at 419-20.

Reviewing courts employ the two-prong test first established in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), to determine whether a defendant has been deprived of the effective assistance of counsel. Failure to establish either prong requires the denial of a PCR petition founded on an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700.

18

To satisfy the first prong, defendants must demonstrate counsel's performance was deficient and "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88. Specific to counsel's performance, "[m]ere dissatisfaction with a 'counsel's exercise of judgment' is insufficient to warrant" intervention. Nash, 212 N.J. at 542 (excess internal quotation marks omitted) (quoting State v. Echols, 199 N.J. 344, 358 (2009)). Importantly, "[c]ounsel's decision to . . . decline pursuit of a legally untenable defense not only reflect[s] professional competence but fulfill[s] an ethical obligation to refrain from advancing a frivolous defense" making counsel's conduct "tactically sound" rather than ineffective. State v. Baverov, 482 N.J. Super. 344, 354 (App. Div. 2025).

Under Strickland's second prong, defendants must "affirmatively prove" "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 694). "In the specific context of showing prejudice after having entered a guilty plea, a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [he or she]

19

would not have pled guilty and would have insisted on going to trial.'" State v. Gaitan, 209 N.J. 339, 351 (2012) (quoting State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009)). In the wake of a plea, defendants must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

B.

As a threshold matter, we decline the State's invitation to determine defendant's claims are procedurally barred under Rule 3:22-5 ("A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings."). The State concedes it never raised this claim before the PCR court, which then adjudicated the matter, holding an evidentiary hearing and making substantive determinations. Accordingly, we decline to consider the newly raised procedural claims. See State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 19 (2009)) ("Generally, 'the points of divergence developed in proceedings before a trial court define the metes and bounds of appellate review.'"); State v. Arthur, 184

N.J. 307, 327 (2005) ("An appellate court ordinarily will not consider issues that were not presented to the trial court . . . .").[6]

Turning to defendant's substantive arguments, we first reject the claim that plea counsel was ineffective for failing to inform defendant of the renunciation defense. Here, the PCR court afforded defendant a hearing, observed the witnesses, weighed the evidence, and credited plea counsel's testimony as reasonably reflecting his strategic decision the defense was not viable. Having reviewed the record, we are satisfied the PCR court did not abuse its discretion in determining defendant's claims she was unaware of the extortion plot, exited the car, and removed the recordings to thwart the crime would not present a "strong" defense.

The PCR court found incredible defendant's account of her benign purpose for travelling with Persaud to New Jersey as well as her claims of how the recordings were created and later came into her possession. We discern no error in the court's findings.

We note "[r]enunciation is . . . not complete if mere abandonment is insufficient to accomplish avoidance of the offense in which case the defendant

---

[6] We recognize the State's specific argument that we decided these issues in [T.W.] III, slip op. at 18-21, but note we decided [T.W.] III under a different standard in the context of defendant's motion to vacate her guilty plea.

must have taken further and affirmative steps that prevented the commission thereof." N.J.S.A. 2C:5-1(d). As we observed in [T.W.] III, "there is no evidence—except [defendant's] own say so—that she took the embarrassing materials when she left the car, in order to foil Persaud's plan." Slip op. at 21-22. Instead, records from the search of Persaud's car upon his arrest indicate the CD recordings and recording equipment were found in the vehicle.

Further, as we also previously emphasized, defendant's claim of renunciation of criminal purpose stood in direct conflict with defendant's certification denying she ever possessed an intent to extort the victim or participate in Persaud's plan. As we observed, "She could renounce only if she had the requisite culpability in the first place." Id. at 20. Again we note, "Although a party may argue inconsistent principles of law, he [or she] cannot be heard . . . to contend for two diametrically opposed sets of facts." Id. at 20-21 (alteration and omission in original) (quoting In re Estate of Perrone, 5 N.J. 514, 527 (1950)).

The PCR court, after hearing defendant's testimony and account of events, did not find her claims credible that she had no involvement in, or advance warning of, the extortion attempt until she unwittingly stumbled into the center of Persaud's scheme just moments before the encounter and attempted to prevent

22

it. That finding was firmly rooted in the PCR record. See id. at 21 ("Even if we presume defendant only meant to argue that her actions foiled Persaud's plan of which she was previously unaware, she failed to establish a colorable claim of innocence. The facts essential to her claim of innocence are neither 'credible' nor 'plausible.'"). Thus, the court's finding plea counsel was not deficient for failing to advance the defense or advise against pleading guilty was sound.

We further emphasize, as we previously observed, any claim plea counsel was deficient for failing to obtain or review discovery is unpersuasive. Here, plea counsel testified he reviewed discovery after the arraignment and obtained the reports and statements related to the offense. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." State v. Cooper, 410 N.J. Super. 43, 57-58 (App. Div. 2009) (quoting Strickland, 466 U.S. at 690-91). "Whether this duty has been satisfied is measured by 'reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" State v. Martini, 160 N.J. 248, 266 (1999) (quoting Strickland, 466 U.S. at 691) (concluding defense counsel's failure to investigate

23

or discover certain evidence was reasonable because it "was significantly affected by [defendant's] conduct" in "purposely hid[ing] information").

We are satisfied defendant did not demonstrate further investigation or awaiting further discovery would have changed the outcome, or that counsel's failure to do so was deficient. Having reviewed the detailed PCR record, we again note, any additional discovery materials, "even if they contained all that defendant alleges, would, at most, have established that she was a victim of the husband's exploitation. [They] would not have established her claim that she was ignorant of Persaud's scheme, and did not participate in it." [T.W.] III, slip op. at 23.[7]

We are similarly convinced the PCR court correctly found plea counsel was not ineffective for failing to investigate defendant's mental health and

---

[7] For this reason, we reject defendant's claim her "psychological damage resulting from being traffick[ed]" is newly-discovered evidence. See State v. Russo, 333 N.J. Super. 119, 136-37 (App. Div. 2000) (Newly discovered evidence requires relief "only if the evidence is (1) material to the issue and not merely cumulative, impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the fact-finder's verdict if a new trial were granted."). Defendant claimed she was sexually abused and trafficked into the United States long before her April 4, 2011 guilty plea. Even assuming she failed to recognize their traumatic impact on her mental state, these claims are not "material" to the attempted extortion and conspiracy offenses, as they do not disprove her involvement and, arguably, provide a motive for the extortion.

24

history. As the court reasonably found, the record contained no indication counsel was alerted to any issues surrounding defendant's mental state that would have required him to probe or research further her emotional status. Defendant testified she was not under psychiatric care and never told plea counsel she had any impairment or inability to understand the nature of the proceedings. Further, we observe defendant's mental health records do not predate her plea and would not have been available to plea counsel. Thus, we conclude plea counsel could neither have investigated sexual abuse about which he was never made aware nor have pursued a mental health defense not indicated at the time, and the PCR court properly denied defendant's PCR petition on this basis.

To the extent we have not addressed any additional arguments raised by defendant, we determine they lack sufficient merit to warrant further discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

25